[No. B223752. Second Dist., Div. Five. Jan. 10, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
TYRONE SHARRET, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication as to parts I., II.A. and B., and III.

**COUNSEL**

Ann Krausz, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Scott A. Taryle and Eric J. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**TURNER, P. J.—**

## I. INTRODUCTION

Defendant, Tyrone Sharret, appeals from his conviction for possession for sale (count 1) and sale of heroin (count 2). (Health & Saf. Code, §§ 11351, 11352, subd. (a).) Defendant admitted the truth of the allegations of three prior separate prison terms (Pen. Code, § 667.5, subd. (b)) and a prior drug conviction (Health & Saf. Code, § 11370.2, subd. (a)). Defendant gave heroin to another person. That person in turn handed the heroin to another individual. That individual handed the heroin to an undercover police officer. Thereafter, defendant was arrested, searched and found to be in possession of even more heroin and $107 in cash.

Defendant was sentenced to state prison for six years—three years on count 2, plus a three-year enhancement under Health and Safety Code, section 11370.2, subdivision (a). Pursuant to Penal Code section 654, subdivision (a) (section 654), the trial court orally imposed but stayed a two-year sentence on count 1. As to count 1, the trial court also orally imposed a $30 court security fee (Pen. Code, § 1465.8, subd. (a)(1)) and a $30 court facilities assessment (Gov. Code, § 70373, subd. (a)(1)), which were ordered to run "consecutive to count 2." The trial court struck the two Penal Code section 667.5, subdivision (b) one-year prior prison term enhancements that remained available for sentencing. (Pen. Code, § 1385, subd. (a).)

As to count 2, the trial court orally ordered defendant to pay a $200 restitution fine (Pen. Code, § 1202.4, subd. (b)(1)); a $200 parole revocation restitution fine (Pen. Code, § 1202.45); a $30 court security fee (Pen. Code, § 1465.8, subd. (a)(1)); a $30 court facilities assessment (Gov. Code, § 70373, subd. (a)(1)); a $50 criminal laboratory analysis fee (Health & Saf. Code, § 11372.5, subd. (a)) (hereafter section 11372.5) "plus penalty assessment"; and a $150 drug program fee (Health & Saf. Code, § 11372.7, subd. (a) (hereafter section 11372.7) "plus penalty assessment." The abstract of judgment omits any reference to the section 11372.7 drug program fee which was orally imposed. But the abstract of judgment reflects imposition of the section 11372.5 criminal laboratory analysis fee and the $50 Penal Code section 1464, subdivision (a)(1) and $35 Government Code section 76000, subdivision (a) penalty assessments. Defendant received credit for 264 days in actual custody and 264 days of conduct credit for a total presentence custody credit of 528 days.

We appointed counsel to represent defendant on appeal. After examination of the record, appointed appellate counsel has filed a brief in which no issues are raised. Instead, appointed appellate counsel asked us to independently review the entire record on appeal pursuant to *People v. Wende* (1979) 25 Cal.3d 436, 441–442 [158 Cal.Rptr. 839, 600 P.2d 1071] (see *Smith v. Robbins* (2000) 528 U.S. 259, 264 [145 L.Ed.2d 756, 120 S.Ct. 746]), including the reporter's transcript of the in camera hearing pursuant to *People v. Mooc* (2001) 26 Cal.4th 1216, 1228–1232 [114 Cal.Rptr.2d 482, 36 P.3d 21]. We have read the sealed peace officer records examined by the trial court in camera. No error occurred in connection with defendant's pretrial peace officer personnel records disclosure motion. On October 8, 2010, we advised defendant he had 30 days within which to submit by brief or letter any grounds of appeal, contentions, or argument he wished this court to consider. No response has been received.

We asked the parties to brief the questions whether the trial court should have imposed a criminal laboratory analysis fee (§ 11372.5) or a drug program fee (§ 11372.7) together with penalties and a surcharge as to count 1; any criminal laboratory analysis fee or drug program fee imposed as to count 1 should then have been stayed under section 654; defendant's presentence custody credit award was excessive; and the abstract of judgment must be corrected to reflect the sentence as orally imposed and as modified on appeal including the penalties and surcharge applicable to the criminal laboratory analysis and drug program fees.

## II. DISCUSSION

### A. An Additional Criminal Laboratory Analysis Fee, Penalty and Surcharge Should Have Been Imposed

Following our request for further briefing, the Attorney General argues an additional criminal laboratory analysis fee, penalties and surcharge should have been imposed. We agree. The trial court orally imposed the section 11372.5 $50 criminal laboratory analysis fee only as to count 2. Both counts 1 and 2 are subject to the criminal laboratory analysis fee. (§ 11372.5.)

Additionally, the criminal laboratory analysis fees imposed as to counts 1 and 2 are subject to the following: a $50 state penalty under Penal Code section 1464, subdivision (a)(1); a $35 county penalty pursuant to Government Code section 76000, subdivision (a)(1); a $10 Penal Code section 1465.7, subdivision (a) state surcharge; a $15 Government Code section 70372, subdivision (a)(1) state court construction penalty; a $10 Government Code

section 76000.5, subdivision (a)(1) emergency medical services penalty; a $5 Government Code section 76104.6, subdivision (a)(1) deoxyribonucleic acid penalty; and a $5 Government Code section 76104.7, subdivision (a) state-only deoxyribonucleic acid penalty. (*People v. Knightbent* (2010) 186 Cal.App.4th 1105, 1109 [112 Cal.Rptr.3d 884]; *People v. Castellanos* (2009) 175 Cal.App.4th 1524, 1528–1530 [98 Cal.Rptr.3d 1].)

The trial court properly imposed a $150 drug program fee (§ 11372.7) as to count 2, which was subject to the following: a $150 state penalty (Pen. Code, § 1464, subd. (a)(1)); a $105 county penalty (Gov. Code, § 76000, subd. (a)(1)); a $30 state surcharge (Pen. Code, § 1465.7, subd. (a)); a $45 state court construction penalty (Gov. Code, § 70372, subd. (a)(1)); a $30 emergency medical services penalty (Gov. Code, § 76000.5, subd. (a)(1)); a $15 deoxyribonucleic acid penalty (Gov. Code, § 76104.6, subd. (a)(1)); and a $15 state-only deoxyribonucleic acid penalty (Gov. Code, § 76104.7, subd. (a)). The drug program fee has an ability to pay provision. (§ 11372.7, subd. (b).) On a silent record, as here, we presume the trial court found defendant did not have the ability to pay a second drug program fee as to count 1. (*People v. Turner* (2002) 96 Cal.App.4th 1409, 1413, fn. 2 [118 Cal.Rptr.2d 99]; *People v. Martinez* (1998) 65 Cal.App.4th 1511, 1516–1518 [77 Cal.Rptr.2d 492]; cf. *People v. Burnett* (2004) 116 Cal.App.4th 257, 261–262 [9 Cal.Rptr.3d 885].) In addition, because the trial court had the discretion to not impose the drug program fee, the prosecutor's failure to object forfeited any claim of error on appeal. (*People v. Tillman* (2000) 22 Cal.4th 300, 303 [92 Cal.Rptr.2d 741, 992 P.2d 1109]; *People v. Turner, supra,* 96 Cal.App.4th at p. 1413, fn. 2.)

The trial court orally imposed the $50 criminal laboratory analysis fee (§ 11372.5) and the $150 drug program fee (§ 11372.7) "*plus penalty assessment.*" (Italics added.) The oral pronouncement of judgment controls over any discrepancy with the minutes or the abstract of judgment. (*People v. Delgado* (2008) 43 Cal.4th 1059, 1070 [77 Cal.Rptr.3d 259, 183 P.3d 1226]; *People v. Mitchell* (2001) 26 Cal.4th 181, 185 [109 Cal.Rptr.2d 303, 26 P.3d 1040]; *People v. Mesa* (1975) 14 Cal.3d 466, 471 [121 Cal.Rptr. 473, 535 P.2d 337]; see Pen. Code, §§ 1213, 1213.5.) In Los Angeles County, trial courts frequently orally impose the penalties and surcharge discussed above by a shorthand reference to "penalty assessments." The responsibility then falls to the trial court clerk to specify the penalties and surcharge in appropriate amounts in the minutes and, more importantly, the abstract of judgment. This is an acceptable practice.

## B. Section 654

As noted above the trial court imposed sentence on count 1 and then stayed it under section 654; orally imposed a Penal Code section 1465.8, subdivision (a)(1) court security fee as to count 1; and should have imposed the section 11372.5 criminal laboratory analysis fee on count 1. The trial court correctly orally imposed the Penal Code section 1465.8, subdivision (a)(1) court security fee even though count 1 was stayed pursuant to section 654. (*People v. Crittle* (2007) 154 Cal.App.4th 368, 370 [64 Cal.Rptr.3d 605].) We now address whether the proper course of action is to stay the section 11372.5 criminal laboratory analysis fee on count 1 after it was imposed even though the Penal Code section 1465.8, subdivision (a)(1) court security fee was correctly imposed on the stayed count.

■ Our Supreme Court has held, "[S]ection 654 prohibits the use of a conviction for any punitive purpose if the sentence on that conviction is stayed." (*People v. Pearson* (1986) 42 Cal.3d 351, 361 [228 Cal.Rptr. 509, 721 P.2d 595]; accord, e.g., *People v. Crittle, supra*, 154 Cal.App.4th at p. 370; *People v. Le* (2006) 136 Cal.App.4th 925, 933 [39 Cal.Rptr.3d 146].) It follows that section 654 applies to stay an imposed criminal laboratory analysis fee only if it is punitive in nature. (*People v. Tarris* (2009) 180 Cal.App.4th 612, 627–628 [103 Cal.Rptr.3d 278]; see *People v. Crittle, supra*, 154 Cal.App.4th at pp. 370–371.) In determining the character of the criminal laboratory analysis fee, the initial and in this case dispositive inquiry is whether the Legislature intended it to be punishment. (*People v. Alford* (2007) 42 Cal.4th 749, 755 [68 Cal.Rptr.3d 310, 171 P.3d 32]; *People v. Hanson* (2000) 23 Cal.4th 355, 358–363 [97 Cal.Rptr.2d 58, 1 P.3d 650]; *People v. Castellanos* (1999) 21 Cal.4th 785, 795 [88 Cal.Rptr.2d 346, 982 P.2d 211].) Our Supreme Court has held: "[W]hat constitutes punishment varies depending upon the context in which the question arises. But two factors appear important in each case: whether the Legislature intended the provision to constitute punishment and, if not, whether the provision is so punitive in nature or effect that it must be found to constitute punishment despite the Legislature's contrary intent." (*People v. Castellanos, supra*, 21 Cal.4th at p. 795; accord, *People v. Alford, supra*, 42 Cal.4th at p. 755.) If a court concludes the Legislature intended a fine as punishment, it need not consider the later factor. (*People v. Hanson, supra*, 23 Cal.4th at p. 361; *People v. Alford, supra*, 42 Cal.4th at p. 755 [" 'If the intention of the [L]egislature was to impose punishment, that ends the inquiry.' "].)

■ *People v. Hanson, supra*, 23 Cal.4th at pages 358–363, is instructive. In *Hanson*, our Supreme Court considered whether a restitution fine imposed pursuant to the Government Code predecessor to Penal Code section 1202.4, subdivision (b)(1) constituted punishment for double jeopardy purposes. Our

Supreme Court applied the analytical framework set forth by the United States Supreme Court in *Hudson v. United States* (1997) 522 U.S. 93, 99–100 [139 L.Ed.2d 450, 118 S.Ct. 488], and concluded the Legislature intended the restitution fine as punishment. Our Supreme Court reasoned as follows: " 'Whether a particular punishment is criminal or civil [for purposes of double jeopardy] is, at least initially, a matter of statutory construction. [Citation.] . . .' (*Hudson* [v. *United States*], *supra*, 522 U.S. at p. 99 . . . .) An initial determination that the legislature did not intend to impose a criminal sanction does not end the inquiry, however, since a statutory scheme may be ' "so punitive either in purpose or effect" [citation] as to "transfor[m] what was clearly intended as a civil remedy into a criminal penalty," [citation].' (*Ibid.*) . . . For the reasons explained below, we conclude the Legislature intended restitution fines as punishment. It is therefore unnecessary to pursue any additional inquiry into their underlying character. [¶] To begin, restitution fines are imposed only upon conviction of a criminal offense. (See [Pen. Code,] § 1202.4, subd. (a).) Although originally enacted as part of the Government Code, the operative statute is now contained in the Penal Code (§ 1202.4 . . .), which expressly denominates 'fines' as 'punishments.' ([Pen. Code,] § 15 . . . .) Section 1202.4, subdivision (a)(3) provides that restitution fines are distinct from restitution orders and are 'in addition to any other penalty . . . .' . . . [¶] Several other features of the statute compare with the imposition of criminal punishment generally. Except for 'compelling and extraordinary reasons,' which the trial court must state on the record (§ 1202.4, subd. (c)), a restitution fine is mandatory even in the absence of a crime victim (§ 1202.4, subd. (a)(3)(A)) and must be made a condition of probation, if granted (§ 1202.4, subd. (m)). As with other types of fines, the money is deposited into the state treasury; it is earmarked for the Restitution Fund, which enables the state to compensate victims of crimes. (§ 1202.4, subd. (e); cf. [Pen. Code,] § 1463.001 [providing for distribution of base fines 'to the specified funds of the state or local agency'].) The amount varies in the trial court's discretion . . . (§ 1202.4, subd. (b)(1))—and may be calculated by multiplying $200 by the years of imprisonment imposed and then multiplying by the number of counts. (§ 1202.4, subd. (b)(2).) In addition, the court 'shall consider any relevant factors including . . . the seriousness and gravity of the offense and the circumstances of its commission, . . . and the number of victims involved in the crime.' (§ 1202.4, subd. (d).) 'A defendant's inability to pay shall not be considered a compelling and extraordinary reason not to impose a restitution fine.' (§ 1202.4, subd. (c).) [¶] Viewed in comparison with other forms of punishment, the statutory scheme thus confirms the Legislature intended restitution fines as a criminal penalty rather than as a civil remedy. (Cf. *People v. Walker* (1991) 54 Cal.3d 1013, 1024 [1 Cal.Rptr.2d 902, 819 P.2d 861] [restitution fine 'qualifies as punishment' for purpose of enforcing plea bargain]; *People v. Zito* (1992) 8 Cal.App.4th 736,

741 [10 Cal.Rptr.2d 491] [restitution fine is punishment for purpose of ex post facto analysis].)" (*People v. Hanson, supra*, 23 Cal.4th at pp. 361–362.)

In *People v. Batman* (2008) 159 Cal.App.4th 587, 589–591 [71 Cal.Rptr.3d 591], the Court of Appeal for the Third Appellate District held the deoxyribo-nucleic acid penalty (Gov. Code, § 76104.6, subd. (a)(1)) was punitive within the meaning of the state and federal constitutional prohibitions against ex post facto laws. Our Third Appellate District colleagues held: "In 2004, the DNA penalty assessment statute stated in pertinent part: 'For the purpose of implementing the DNA Fingerprint, Unsolved Crime and Innocence Protection Act, there shall be levied an additional penalty of one dollar for every ten dollars ($10) or fraction thereof in each county which *shall be collected together with and in the same manner* as the amounts established by Section 1464 of the Penal Code, *upon every fine, penalty, or forfeiture imposed and collected by the courts for criminal offenses* . . . .' (Gov. Code, § 76104.6, former subd. (a); italics added.) [¶] The statute denominates the assessment a penalty: it applies to every criminal fine, penalty, and forfeiture; it is assessed in proportion to the defendant's criminal culpability; and it is to be collected and processed using the same statute that authorizes the state penalty assessment. In addition, the assessment will be used primarily for law enforcement purposes. Its proceeds are to be deposited into the county and state DNA identification funds, which in turn are to be used to comply with the requirements of Penal Code section 298.3 (Gov. Code, § 76104.6, subd. (b)(2), (4)(A)), a provision authorizing the Department of Justice DNA Laboratory to contract with other public and private laboratories to 'ensure expeditious and economical processing of offender specimens and samples for inclusion in the FBI's CODIS System and the state's DNA Database and Data Bank Program . . . .' (Pen. Code, § 298.3, subd. (a).) [¶] The DNA penalty assessment is similar to the state court facilities construction penalty assessment (Gov. Code, § 70372), which we determined is an ex post facto law for crimes committed prior to its effective date. (See *People v. High* (2004) 119 Cal.App.4th 1192, 1197–1199 [15 Cal.Rptr.3d 148].) Like the construction penalty, the DNA penalty assessment is denominated a 'penalty' and is based upon a percentage of any fine, penalty, or forfeiture. In addition, the bulk of the DNA penalty assessment funds will be used to process DNA samples and specimens collected in the future for inclusion in databanks operated by and for the benefit of law enforcement. [¶] The fact that the DNA penalty assessment is punitive is also shown by contrasting it with two other assessments of recent vintage found not to be punitive: (1) the court security fee (Pen. Code, § 1465.8, subd. (a)(1)), which is nonpunitive because it is denominated a 'fee,' is calculated in rough proportion to court usage, and is imposed on the vast majority of court users, both civil and criminal (*People v.*

*Alford*[, *supra*,] 42 Cal.4th 749 . . .); and (2) the criminal justice administration and booking fees (Gov. Code, § 29550.2, subd. (a)), which are nonpunitive user fees primarily because they are designated fees and are limited to the actual administrative costs in booking or otherwise processing those arrested and convicted (*People v. Rivera* (1998) 65 Cal.App.4th 705, 707–712 [76 Cal.Rptr.2d 703]). [¶] Unlike the court security fee and the criminal justice administration and booking fee, the DNA penalty assessment is explicitly designated a penalty; it is calculated in direct proportion to other fines, penalties, and forfeitures imposed; it is collected using the same provision for collecting the state penalty assessment; and it will be used primarily for future law enforcement purposes. Thus, it is a punitive ex post facto law with respect to offenses committed prior to its effective date." (*People v. Batman, supra*, 159 Cal.App.4th at pp. 590–591.)

Our Supreme Court reached a contrary conclusion with respect to the Penal Code section 1465.8, subdivision (a)(1) court security fee in an ex post facto context in *People v. Alford, supra*, 42 Cal.4th at pages 755–757. Our Supreme Court relied in part on our decision in *People v. Wallace* (2004) 120 Cal.App.4th 867, 875–876 [16 Cal.Rptr.3d 152], in which we held imposition of the court security fee was not punitive. Our Supreme Court in *Alford* held: " 'The stated reason for enacting the $20 court security fee appears in section 1465.8, subdivision (a)(1), "To ensure and maintain adequate funding for court security . . . ." The maintenance of "adequate funding for court security" purposes is unambiguously a nonpunitive objective . . . . Moreover, the $20 court security fee was imposed not merely upon persons convicted of [a] crime. Government Code section 69926.5, subdivision (a), which was adopted pursuant to [the same Assembly bill] required a $20 court security surcharge also be imposed on the first paper filed on behalf of a plaintiff or a defendant in any limited and unlimited civil action or special proceeding and in probate matters. [Citations.] Moreover, section 1465.8, subdivision (a)(2) requires that the $20 surcharge be imposed when a traffic violation charge is *dismissed* because the alleged violator attends traffic school. Further, section 1465.8, subdivision (c) requires that the $20 court security fee be collected when bail is posted—a scenario which includes arrestees who will never be charged . . . with a crime. Additionally, section 1465.8 could only go into effect if specified levels of trial court funding were enacted by the Legislature. [Citation.] Although it conceivably could happen, it is difficult to divine a punitive purpose for a fee that would go into effect only if specified trial court funding levels . . . were enacted. [Citation.]' ([*People v.*] *Wallace, supra*, 120 Cal.App.4th at pp. 875–876.) [¶] The Legislature generally does not adopt punitive statutes that are dependent on 'trial court funding levels in budget line items.' (*People v. Wallace, supra*, 120 Cal.App.4th at p. 876.) The Legislature also referred to the $20 amount due upon conviction by a nonpunitive term, labeling it a 'fee' and not a 'fine.' (*Ibid.*) Considering these

factors in conjunction with the express legislative purpose of 'maintain[ing] adequate funding for court security,' ([Pen. Code,] § 1465.8[, subd.] (a)(1), the *Wallace* court concluded the fee was imposed for a nonpunitive purpose. ([*People v.*] *Wallace*, [*supra*, 120 Cal.App.4th] at p. 876.) Because the legislative intent is clear, the analysis is correct." (*People v. Alford, supra*, 42 Cal.4th at pp. 756–757, fns. omitted.)

Here, we conclude the Legislature intended the section 11372.5 criminal laboratory analysis fee to be punitive. The criminal laboratory analysis fee is set out in Health and Safety Code section 11372.5, which provides in pertinent part: "(a) Every person who is convicted of a violation of Section 11350, 11351, 11351.5, 11352, 11355, 11358, 11359, 11361, 11363, 11364, 11368, 11375, 11377, 11378, 11378.5, 11379, 11379.5, 11379.6, 11380, 11380.5, 11382, 11383, 11390, 11391, or 11550 or subdivision (a) or (c) of Section 11357, or subdivision (a) of Section 11360 of this code, . . . shall pay a criminal laboratory analysis fee in the amount of fifty dollars ($50) for each separate offense. The court shall increase the total fine necessary to include this increment. [¶] With respect to those offenses specified in this subdivision for which a fine is not authorized by other provisions of law, the court shall, upon conviction, impose a fine in an amount not to exceed fifty dollars ($50), which shall constitute the increment prescribed by this section and which shall be in addition to any other penalty prescribed by law. [¶] (b) The county treasurer shall maintain a criminalistics laboratories fund. The sum of fifty dollars ($50) shall be deposited into the fund for every conviction . . . , in addition to fines, forfeitures, and other moneys which are transmitted by the courts to the county treasurer pursuant to Section 11502 . . . . Moneys in the criminalistics laboratory fund shall, except as otherwise provided in this section, be used exclusively to fund (1) costs incurred by criminalistics laboratories providing microscopic and chemical analyses for controlled substances, in connection with criminal investigations . . . , (2) the purchase and maintenance of equipment for use by these laboratories in performing the analyses, and (3) for continuing education, training, and scientific development of forensic scientists regularly employed by these laboratories. . . ."

 The section 11372.5 criminal laboratory analysis fee constitutes punishment and must be stayed under section 654 for the following combined reasons. First, the Legislature refers to the criminal laboratory analysis fee as an increment increasing the total fine. As noted above, section 11372.5 states, "The court shall increase the total *fine* necessary to include *this increment.*" (Italics added.) Although described as a "fee," the criminal laboratory analysis fee is an increment of a fine and as such it is a fine. (*People v. McCoy* (2007) 156 Cal.App.4th 1246, 1252 [68 Cal.Rptr.3d 134]; *People v. Martinez, supra*, 65 Cal.App.4th at p. 1522; *People v. Sanchez* (1998) 64 Cal.App.4th 1329, 1332 [76 Cal.Rptr.2d 34]; see *People v. Talibdeen* (2002) 27 Cal.4th 1151, 1153–1154 [119 Cal.Rptr.2d 922, 46 P.3d 388].) And, as our Supreme

Court has held, "Fines arising from [criminal] convictions are generally considered punishment." (*People v. Alford, supra*, 42 Cal.4th at p. 757, citing *People v. Wallace, supra*, 120 Cal.App.4th at p. 877; see *People v. McVickers* (1992) 4 Cal.4th 81, 84 [13 Cal.Rptr.2d 850, 840 P.2d 955] ["fines are punishment"]; Pen. Code, § 15.) Second, a criminal laboratory analysis fee is imposed only upon conviction of a criminal offense involving the manufacture, cultivation, possession, use, transportation or sale of a controlled substance. It has no application in a civil context. Third, the fee is assessed in proportion to a defendant's culpability insofar as it applies to each separate conviction of a violation of specified sections of the Health and Safety Code governing controlled substances. Fourth, the criminal laboratory analysis fee is mandatory and there is no ability to pay requirement. Fifth, the funds imposed and collected are to be used for law enforcement purposes. The criminal laboratory analysis fee is earmarked for the criminalistics laboratories fund, which has no civil purpose. That fund enables local governments to cover the costs of analyses by criminalistics laboratories in connection with criminal investigations, to purchase and maintain equipment necessary to that task, and to educate and train forensic scientists employed by such labs. Sixth, section 11372.5 contains no language suggesting the Legislature intended to exempt the criminal laboratory analysis fee from section 654. (See *People v. Benson* (1998) 18 Cal.4th 24, 31–33 [74 Cal.Rptr.2d 294, 954 P.2d 557]; *People v. Le, supra*, 136 Cal.App.4th at pp. 932–934.) Seventh, there is no evidence section 11372.5 was a mere budget measure as in the case of the Penal Code section 1465.8, subdivision (a) court security fee. (*People v. Alford, supra*, 42 Cal.4th at p. 759; *People v. Wallace, supra*, 120 Cal.App.4th at p. 878.) Eighth, when the mandatory penalties and surcharge are added, the total amount due is $180 which is substantially greater than the $20 Penal Code section 1465.8, subdivision (a) court security fee in *Alford* (now $40). Therefore, as it is punitive in nature, the criminal laboratory analysis fee imposed as to count 1 must be stayed under section 654 along with the charge of which defendant was convicted.

C., D.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III. DISPOSITION

As to count 1, the judgment is modified to impose and stay a $50 criminal laboratory analysis fee together with penalties and a surcharge as described in parts II.A. and B. of this opinion. Further, as to count 2, the $50 criminal laboratory analysis fee is augmented to include the penalties and the surcharge

---

*See footnote, *ante*, page 859.

discussed in part II.A. of the opinion. The judgment is affirmed in all other respects. Upon remittitur issuance, the clerk of the superior court shall prepare an amended abstract of judgment and forward a copy to California's Department of Corrections and Rehabilitation.

Armstrong, J., and Kriegler, J., concurred.