Filed 2/26/14  P. v. Boyer CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E058143 |
| v. | (Super.Ct.No. FVA1201148) |
| RICHARD KEITH BOYER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Dwight W. Moore, Judge.  Affirmed.

Rex Adam Williams, under appointment by the Court of Appeal, for Defendant and Respondent.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina, and Kristen Kinnaird Chenelia, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury convicted defendant Richard Keith Boyer of felony possession of a controlled substance (count 1; Health & Saf. Code, § 11377, subd. (a)).[1] The court granted defendant three years' probation with various terms and conditions including a requirement that he pay a $246 criminal laboratory fee pursuant to section 11372.5. On appeal, defendant contends the court erred in ordering payment of the fee as a condition of his probation. We affirm.

FACTS AND PROCEDURAL HISTORY

On May 18, 2012, Fontana Police Department Corporal Daniel Delgado noticed a pickup truck abruptly turn in front of him, cutting him off, and forcing him to slam on his brakes. Delgado activated his emergency lights in order to conduct a traffic stop to investigate whether the driver was intoxicated. The driver, defendant, immediately leaned over the right hand, passenger side of the truck's cab for the 30 to 45 seconds it took him to pull over and stop.

Out of concern defendant may have been reaching for a gun, Delgado asked defendant to step out of the vehicle; Delgado then detained and handcuffed defendant. Delgado requested additional officers respond to the scene. Within a few minutes, other officers, including officer Joshua Rice, arrived. Delgado turned the investigation over to Rice.

When Rice arrived, he saw defendant sitting on the curb with Delgado next to him. Rice spoke with Delgado. Rice then obtained permission from defendant to search the

_____

[1] All further statutory references are to the Health and Safety Code unless otherwise indicated.

2

vehicle. Based on his conversation with Delgado, Rice opened the door of the truck to search for a firearm. Instead, Rice saw a small, clear Ziploc baggie on the floorboard of the passenger side of the vehicle just underneath the front edge of the seat. He testified, "There was a white crystalline substance inside of the baggie" which resembled methamphetamine. Rice booked the baggie into evidence. The parties stipulated the baggie contained 0.24 grams of methamphetamine, a useable amount.

Rice then searched defendant. In defendant's front short pants' pocket, Rice found a "cylindrical plastic pen with the tips broken off." He testified "There was a white crystalline residue inside of the pen which I also believed to be methamphetamine residue." Hollowed out pens are commonly used to ingest methamphetamine by inhaling or snorting. Rice opined the pen "was a narcotic ingestion device specifically for snorting methamphetamine."

Defendant testified that although the truck belonged to him, he had loaned it to his brother and had not driven it in two weeks. The pen was not his. He found it on the floorboard of this truck that day and placed it in his pocket. The methamphetamine found in his vehicle was not his. He had never seen it before Rice discovered it. Defendant leaned over the seat while Delgado was pulling him over in order to retrieve a Pepsi which had rolled off the seat. Defendant also reached over to his glove box to obtain his vehicle registration.

The probation report prepared in advance of defendant's sentencing recommended probation term 22 require defendant pay a laboratory analysis fee in the amount of $50 pursuant to section 11372.5, plus a penalty assessment of $150, and a processing fee of

3

$35 pursuant to Penal Code section 1205, subdivision (d), for a total of $235.[2]  At the sentencing hearing, defense counsel objected to term 20; the court struck term 20. Defense counsel then submitted.  Defendant accepted probation on the terms outlined in the probation report.

The sentencing minute order reflects that term 19 of defendant's probation conditions requires that he pay a criminal lab analysis fee in the amount of $246. Someone circled the $235 amount in the probation report and wrote in $246.  The court made no oral pronouncement of the amount of the criminal lab analysis fee.  There is no indication in the record why the recommended amount was changed from $235 to $246.

DISCUSSION

Defendant contends the requirement defendant pay a $246 criminal analysis fee as a condition of his probation is unauthorized and must be modified to reflect payment as a separate order and not as a condition of his probation.  The People maintain payment of the fee is appropriate as a condition of defendant's probation because it was intended to be punitive.  We agree with the People.

"A trial court has broad, but not unlimited, discretion in setting the terms and conditions of probation.  [Citations.]  On appeal, we review the trial court's exercise of

---

[2]  Penal Code section 1205 does not specify the amount of either a penalty assessment or a processing fee.  Subdivision (d) provides "Nothing in this section shall be construed to prohibit the clerk of the court, or the judge if there is no clerk, from turning these accounts over to another county department or a collecting agency for processing and collection."  Subdivision (a) reflects, "The judgment shall specify the term of imprisonment for nonpayment of the fine, which shall not be more than one day for each thirty dollars ($30) of the fine, nor exceed the term for which the defendant may be sentenced to imprisonment for the offense of which he or she has been convicted."

4

that discretion under the abuse of discretion standard. 'A condition of probation will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . ." [Citation.]' [Citations.] All three factors must be present for a condition of probation to be invalid. [Citation.] Furthermore, '[i]nsofar as a probation condition serves the statutory purpose of "reformation and rehabilitation of the probationer," [citation] it necessarily follows that such a condition is "reasonably related to future criminality" and thus may not be held invalid whether or not it has any "relationship to the crime of which the offender was convicted."' [Citation.] A trial court does not abuse its discretion unless its determination is arbitrary or capricious or ""'exceeds the bounds of reason, all of the circumstances being considered.'"" [Citation.]" (*People v. Hughes* (2012) 202 Cal.App.4th 1473, 1479 (Fourth Dist., Div. Two).)

Section 11372.5, subdivision (a), provides that every person convicted of certain enumerated crimes, including possession of a controlled substance, "pay a criminal laboratory analysis fee in the amount of fifty dollars ($50) for each separate offense." Subdivision (b) prescribes that the "county treasurer shall maintain a criminalistics laboratories fund. The sum of fifty dollars ($50) shall be deposited into the fund for every" enumerated crime "in addition to fines, forfeitures, and other moneys which are transmitted by the courts to the county treasurer pursuant to Section 11502. The deposits shall be made prior to any transfer pursuant to Section 11502. The county may retain an amount of this money equal to its administrative cost incurred pursuant to this section.

5

Moneys in the criminalistics laboratories fund shall, except as otherwise provided in this section, be used exclusively to fund (1) costs incurred by criminalistics laboratories providing microscopic and chemical analyses for controlled substances, in connection with criminal investigations conducted within both the incorporated or unincorporated portions of the county, (2) the purchase and maintenance of equipment for use by these laboratories in performing the analyses, and (3) for continuing education, training, and scientific development of forensic scientists regularly employed by these laboratories."

The criminal laboratory analysis fee was related to the crime for which defendant was convicted. A jury convicted defendant of possession of a controlled substance. The parties stipulated "The white crystalline substance seized by Officer Joshua Rice on May 18, 2012[,] was analyzed by James Vaughn, a qualified forensic criminalist for the San Bernardino Sheriff's Department, under methods currently accepted in the scientific community, and was found [to] be 0.24 grams of methamphetamine. [¶] That 0.24 grams of methamphetamine is a useable quantity." Therefore, imposition of the fee as a condition of defendant's probation was a valid exercise of the sentencing court's discretion.

Defendant relies on *People v. Pacheco* (2010) 187 Cal.App.4th 1392 (*Pacheco*), for the proposition that nonpunitive fees cannot be imposed as a condition of a defendant's probation, but must be made by a separate order. *Pacheco* held that "Certain fines such as those relating to restitution, for example, may by statute be imposed as conditions of probation, but the court security fee is not one of them. [Citations.] One reason for the distinction between fines that may be imposed as probation conditions and

6

those that may not is that probation 'should be oriented towards rehabilitation of the defendant and not toward the financing of the machinery of criminal justice.' [Citations.] An equally compelling reason for the distinction is that a defendant may be imprisoned for violating a probation condition, but not for violating an order to pay costs and fees. [Citation.] The nonpunitive purpose of [a] fee squarely places it among those fines and fees that are collateral to the crime and the consequent punishment for its commission." (*Id.* at pp. 1402-1403, disapproved of on another ground in *People v. McCullough* (2013) 56 Cal.4th 589, 599; accord *People v. Kim* (2011) 193 Cal.App.4th 836, 842 [court facilities fees].) The People apparently agree with *Pacheco*'s statement of the law, but contend the criminal laboratory fee is punitive and, therefore, was appropriately imposed as a condition of defendant's probation. We agree with the People.

First, in reaching its holding, *Pacheco* relied upon several cases which held that discretionary, nonpunitive fees could not be imposed as conditions of probation. In *People v. Hall* (2002) 103 Cal.App.4th 889, the court held that the nonpunitive, nonmandatory fees of the costs of probation supervision and the preparation of probation reports could not be made conditions of probation because they could only be imposed after the court determined the defendant was financially able to pay them. (*Id.* at p. 892.) In *Brown v. Superior Court* (2002) 101 Cal.App.4th 313, the court held the costs of polygraph testing could not be made a condition of probation because the court had to determine defendant's financial ability to pay them prior to imposing them. (*Id.* at pp. 321-322.) In *People v. Amor* (1974) 12 Cal.3d 20, the court held a defendant could not be held in violation of probation for failure to pay defense attorney fees because the order

7

was nonpunitive and required a court determination of ability to pay. (*Id.* at pp. 25-27.)

Here, in contrast to the cases relied upon by *Pacheco*, the criminal laboratory analysis fee is mandatory; (*People v. Taylor* (2004) 118 Cal.App.4th 454, 456) the court has no discretion to reduce or waive the fee based upon a defendant's inability to pay. (*People v. Sharret* (2011) 191 Cal.App.4th 859, 870; *People v. Talibdeen* (2002) 27 Cal.4th 1151, 1153.)

Second, courts have imposed laboratory analysis fees as a condition of probation without objection either in the trial court or on appeal. (*People v. Mendoza* (2003) 106 Cal.App.4th 1030, 1032; *People v. Valtakis* (2003) 105 Cal.App.4th 1066, 1069.) Third, other courts have found that section 11372.5 fees are mandatorily imposed punitive fines. (*People v. Clark* (1992) 7 Cal.App.4th 1041, 1050 [Imposition of § 11372.5 fee is mandatory and not, in itself, improperly imposed as a condition of probation unless not disclosed in negotiated plea bargain because it is punitive.]; *People v. Martinez* (1998) 65 Cal.App.4th 1511, 1522; *People v. Taylor, supra,* 118 Cal.App.4th at p. 456 [Imposition of § 11372.5 fee is mandatory]; *People v. Turner* (2002) 96 Cal.App.4th 1409, 1413 [§ 11372.5 fee is a mandatory penalty assessment]; *People v. Talibdeen, supra,* 27 Cal.4th at p. 1152 [Laboratory analysis fee imposed by Court of Appeal because it was a mandatory penalty, not a discretionary sentencing choice].) Fourth, similar, related fees have also been imposed as a condition of probation and found punitive. (*People v. Sierra* (1995) 37 Cal.App.4th 1690, 1694-1696 [§ 11372.7 drug program fee is punitive]; *Martinez,* at p. 1522.)

Fifth, section 11327.5 itself only permits imposition of a $50 fee. However, it incorporates other *fines* and forfeitures ordered pursuant to section 11502. Section 11502 permits the disposition of other *fines* imposed by the court. Penal Code section 1464.8 provides for the allocation and distribution of *fines and penalties* assessed in criminal cases pursuant to sections 11372.5 and 11502. Thus, when construed in the context of the statutory scheme as a whole, section 11327.5 fees are mandatory, punitive fines, not discretionary fees.

Sixth, although the People note no published case squarely addresses the issue of whether a section 11372.5 fee may be imposed as a condition of probation, they observe there is direct, extensively exposited authority for the proposition that a section 11372.5 fee is punitive. In *People v. Sharret, supra,* 191 Cal.App.4th 859, after an exhaustive analysis of the fines and fees which may or must be imposed upon conviction and the cases interpreting them, the court explicated eight reasons for concluding that "the Legislature intended the section 11372.5 criminal laboratory analysis fee to be punitive." (*Id*. at pp. 869, 870.)

*Sharret* reasoned the language of section 11372.5, provides that the laboratory analysis *fee* is actually an increment of a *fine* and, therefore, punitive. (*People v. Sharret, supra,* 191 Cal.App.4th at pp. 869-870.) It noted the fee may only be imposed upon a criminal conviction and has no application in a civil context. (*Id*. at p. 870.) "[T]he fee is assessed in proportion to a defendant's culpability insofar as it applies to each separate conviction of a violation of specified" offenses. (*Ibid*.) The fee is mandatory and not subject to a determination of the defendant's ability to pay. (*Ibid*.) The fees are used for

9

law enforcement purposes. (*Ibid.*) "[S]ection 11372.5 contains no language suggesting the Legislature intended to exempt the criminal laboratory analysis fee from section 654. [Citations.]" (*Id.* at p. 870.) There was no evidence the fee was a "mere budget measure" like other statutory fees. (*Ibid.*) Finally, the total amount of the fee, $180 in the *Sharret* case and $246 in the instant case, is substantially greater than other procedural funding fees such as a court security fee ($30). (*Ibid.*) Therefore, the criminal laboratory analysis fee is punitive in nature. (*Ibid.*)

The court in *People v. Vega* (2005) 130 Cal.App.4th 183, acknowledged that "[a] cogent argument can be made from the language of Health and Safety Code section 11372.5, subdivision (a) the Legislature intended the $50 laboratory 'fee' to be an additional *punishment* for conviction of one of the enumerated felonies." (*Id.* at p. 194, italics added.) This is because the statute itself refers to the "fee" as a "fine" which may be imposed in increasing increments with respect to the number of offenses committed in addition to any other "penalty" prescribed by law. (*Id.* at p. 194; § 11372.5, subd. (a).) Indeed, in *Vega,* at page 194, the court found support for such an interpretation in the language of *People v. Talibdeen, supra,* 27 Cal.4th 1151, in which the California Supreme Court referred to imposition of a section 11372.5, subdivision (a), "fee" as a trigger requiring the levy of a mandatory, not "discretionary-sentencing choice" of other "penalties." (*Talibdeen*, at pp. 1153-1154.)

Nevertheless, the court in *Vega* found *Talibdeen* "not controlling . . . because the court did not address the question whether the laboratory analysis fee was a punishment. Rather, the court and the parties in *Talibdeen* proceeded under the assumption the fee was

10

a punishment and addressed the question whether the trial court had discretion to waive the penalty assessments." (*People v. Vega, supra,* 130 Cal.App.4th at p. 195.) It found the label of a levy as a "fee" or "fine" not a dispositive indicator of an intent to be punitive, particularly when the Legislature uses both terms in reference to the charge in the same statute. (*Ibid*.) Contrariwise, the court noted "Fines are imposed for retribution and deterrence; fees are imposed to defray administrative costs." (*Ibid*.)

The court held "the main purpose of . . . section 11372.5 is not to exact retribution against drug dealers or to deter drug dealing . . . but rather to offset the administrative cost of testing the purported drugs the defendant transported or possessed for sale in order to secure his conviction." (*People v. Vega, supra,* 130 Cal.App.4th at p. 195.) It reasoned that "The legislative description of the charge as a 'laboratory *analysis* fee' strongly supports our conclusion, as does the fact the charge is a flat amount, it does not slide up or down depending on the seriousness of the crime, and the proceeds from the fee must be deposited into a special 'criminalistics laboratories fund' maintained in each county by the county treasurer." (*Ibid*.)

We find *Sharett* the more persuasive of the two conflicting decisions. Although, section 11327.5 refers to the charge as a "fee," it both internally, and through consideration of the related statutes, reflects that it is both a *fine* and a *penalty*. (§§ 11372.5, 11502, Pen. Code, §§ 1205, 1464.8.) The base criminal laboratory analysis "fee" is only $50, a fraction of the total "increment" of the $246 penalty imposed in this case. Numerous courts have found the "fee" mandatory and punitive. (*People v. Sharret, supra,* 191 Cal.App.4th at pp. 869-870; *People v. Clark, supra,* 7 Cal.App.4th at p. 1050;

11

*People v. Martinez, supra,* 65 Cal.App.4th at p. 1522; *People v. Taylor, supra,* 118 Cal.App.4th at p. 456; *People v. Turner, supra,* 96 Cal.App.4th at p. 1413; *People v. Talibdeen, supra,* 27 Cal.4th at p. 1152.)  Some have imposed the fee as a condition of probation.  (*People v. Mendoza, supra,* 106 Cal.App.4th at p. 1032; *People v. Valtakis, supra,* 105 Cal.App.4th at p. 1069.)  The fee is related to the crime for which defendant was convicted.  Thus, the court acted within its discretion in imposing the fee as a condition of defendant's probation.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:

HOLLENHORST
          Acting P. J.

McKINSTER
               J.

12