Filed 8/16/16  In re Isaac L. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re ISAAC L., a Person Coming Under the Juvenile Court Law. | B265121 |
| | (Los Angeles County Super. Ct. No. DK08531) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. JOSE L., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Connie R. Quinones, Judge.  Affirmed in part; reversed in part.

Catherine C. Czar, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, R. Keith Davis, Acting Assistant County Counsel, and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

Jose L. (Father) appeals from a jurisdiction/disposition order declaring his son, Isaac L., to be a dependent child of the court pursuant to Welfare and Institutions Code section 300, subdivision (b), and ordering him to participate in domestic violence and sexual abuse counseling. He contends there is no substantial evidence Isaac was currently at risk of physical harm due to domestic violence or inappropriate touching. We reverse as to the jurisdictional finding based on inappropriate touching, and otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 10, 2014, Isaac's 16-year-old half-sister, Y.D., was arrested for assault with a deadly weapon after she attempted to stab their mother, Miriam S. (Mother), with a knife. At that time, the Department of Children and Family Services (DCFS) received a referral alleging general neglect by Mother and emotional abuse as to eight-year-old Isaac and three other half-siblings: 13-year-old O.D., 10-year-old M.C., and two-year-old Ethan R.

A children's social worker (CSW) interviewed the four younger children and their cousins, who were at the family home at the time of the incident. They said that Mother found Y.D.'s marijuana and took it away from her; Y.D. got mad, got a knife and threatened Mother. The police came and arrested Y.D. The children and their cousins also reported that Ethan's father, E.R., would get drunk and would be physically and verbally abusive to Ethan and Mother.

The CSW interviewed Mother, who discussed the difficulties she had been experiencing with Y.D., who had mental health and behavioral problems. Mother said Y.D.'s problems began when she was 10 or 11 years old, after she told Mother that Father had touched her inappropriately. Mother confronted Father, who denied doing so. Mother did not know whether Y.D.'s claim was true or not. She thought the incident was the start of Y.D.'s problems and regretted not reporting it to the police.

2

As to Father, Mother reported that he was in another relationship and recently had a daughter. He came to Mother's home to pick up Isaac but, by agreement, he did not come into the house. He gave Mother $150 per month.

Mother also stated that she had experienced domestic violence at the hands of Y.D. and O.D.'s father, "a lot of violence with" Father, and violence from E.R., who was her current partner. She acknowledged her need to participate in domestic violence therapy.

A CSW interviewed Y.D. the following day at the juvenile hall. Y.D. denied any sexual abuse and specifically denied that Father sexually abused her. A day later, however, Y.D.'s therapist telephoned a CSW and stated that Y.D. disclosed that she had been molested by Father many years ago. A CSW then went to the juvenile hall to discuss the molestation with Y.D. Y.D. stated the incident occurred when she was in the third grade. She and Father were the only ones home. Father pulled her pants down and began kissing her on her side. Y.D. did not tell Mother about the incident immediately because she was scared. When she finally told Mother, Mother did not believe her. When Mother asked Father about the incident, he denied it happened. Father never did anything like that again, and she was unaware of him molesting any of her siblings.

The CSW interviewed Father on November 24, 2014. He said he was in a romantic relationship with Mother from 2005 to 2006 but then began experiencing difficulties because Mother began seeing E.R. He and Mother got into a physical altercation in 2008, after they were separated. He said that although Mother physically assaulted him, he was arrested because he did not tell law enforcement that she had done so. He acknowledged he had engaged in mutual verbal altercations with Mother.

Father denied Y.D.'s allegation of sexual molestation, stating that the "'alleged incident happened when he and mother were separated that he went to the home (used his key to gain access into the home) at approximately 5:00 A.M. to check on the children'" while Mother was at a party. All he did was "'cover the children with a blanket.'" Father asked the CSW, "'don't you think mother should have called the police if the allegations

3

were true? The police or social workers never came to interview me or ask about these allegations."

On November 26, 2014, DCFS detained Isaac, O.D., M.C., and Ethan.

On December 3, 2014, DCFS filed a petition under Welfare and Institutions Code section 300[1] alleging Isaac, O.D., M.C., and Ethan were at risk of serious physical harm due to physical abuse by Mother, Father, and E.R. (subd. (a)); they were at risk of serious physical harm or illness due to Father's sexual abuse of Y.D., Mother's physical abuse, E.R.'s alcohol abuse, and domestic violence between Mother and E.R. and Mother and Father (subd. (b)); and the children were at risk of abuse and neglect due to Father's sexual abuse of Y.D. and Mother's physical abuse of the children (subd. (j)). At the detention hearing, Mother and Father denied the allegations of the petition. The juvenile court found a prima facie case for detention and ordered the children detained, although it gave DCFS discretion to release the children to Mother upon verification that E.R. was no longer living in the family home. It granted Father monitored visitation.

In the jurisdiction/disposition report, DCFS reported that Mother stated that there was severe domestic violence with Father and she was terrified of him. They never lived together, "[b]ut he would come to the house daily just to make my life a living hell. We would fight daily." She accused him of raping her and claimed she only assaulted him physically because he demanded money and slapped her. Mother repeated her statement that she did not believe Y.D. when she told Mother that Father had touched her inappropriately, and she regretted that she did not report it to the police at the time.

Father said in his interview he separated from Mother in 2008 because she accused him of domestic violence and he went to jail, even though she was the one who would physically assault him. The only communication he had with her after that was by telephone when it was about Isaac. As to the allegation of sexual abuse, he said, "'After 7 years they are accusing me of something like that. I think this was all made up between [Mother], [Y.D.], and that man [E.R.]. For what I know [Y.D.] had also accused him of

---

[1] All further statutory references are to the Welfare and Institutions Code.

4

the same thing at one point. [Mother] never called the police on me or anything. They never called the police even after I told them to because I knew I had not done anything. It is all a big lie."

DCFS also reported that Isaac was hospitalized from December 16 through 22 for a psychiatric evaluation after he tried to suffocate Ethan. He was diagnosed with a mood disorder and given medication.

A CSW interviewed Y.D. in the juvenile hall on May 15, 2015. She said she did not like Father, and he was lying about Mother physically assaulting him. She explained, "He is trying to get custody of my brother Isaac. My brother is very much affected by seeing all this violence. He is the one who witnessed his parents fighting that he has become hyper and all of the sudden he is a good father? I don't like my stepdad because he tried to abuse me when I was at the elementary school. I was in 3rd grade when I was in my mom's bedroom watching a television and I do not know where my mom was. He thought I was sleeping when he came to the bedroom. He pulled down my pants and kissed my back close to [my buttocks], but I got up and went to the bathroom and he stopped. I didn't tell my mom because I was afraid that she was not going to believe me, but I told her when I was in the 4th grade. My mom didn't believe me because I was smiling when I told her, but hey!!! I was nervous because my stepdad Jose was there and he denied it."

At the jurisdiction/disposition hearing on May 19, 2015, Y.D. testified about the incident with Father. No other witnesses testified.

Father's counsel argued there was no evidence that any domestic violence was ongoing or likely to continue in the future, as Mother and the children no longer lived with Father, and therefore, there was no evidence the children were currently at risk of physical harm due to domestic violence. As to sexual abuse, counsel argued there were "just too many contradictions" in Y.D.'s statements throughout the various reports, and it "strains credulity to think that this story can hold any water." Counsel also requested that the allegation of sexual abuse be amended to allege inappropriate touching.

5

The juvenile court found Y.D. to be credible. It noted the detailed statement she gave on November 11, 2014 and the emotional interview she gave when in juvenile hall. It also noted the self-destructive behaviors that began after the incident and when she told Mother and Mother did not believe her. The court agreed, however, to amend the allegations of sexual abuse to inappropriate touching. The court also found "that domestic violence is clear in this household."

After finding the children to be persons described by section 300, subdivision (b),[2] and dismissing all other allegations, the court proceeded to the disposition. Father's counsel objected to a requirement that Father participate in domestic violence and sexual abuse programs, explaining, "At this stage, the department's burden is clear and convincing evidence, and it's Father's contention that there is no . . . showing of a current risk to the children by clear and convincing evidence . . . ."

The court declared the children to be dependents of the court and ordered them removed from Mother's custody. It ordered that Isaac be given individual counseling and psychiatric services, including medication management. It ordered Father to participate

_____

[2]     As to Father, the juvenile court sustained the allegation that "[o]n a prior occasion, . . . [Father] inappropriately touched [Y.D.]. [Father] pulled [Y.D.]'s pants down, fondled [Y.D.] and kissed [Y.D.'s] stomach and back. The mother knew of [Father's inappropriate touching of Y.D.] and failed to protect [Y.D.]. The mother allowed [Father] to frequent [Y.D.'s] home and have unlimited access to [Y.D.]. The mother failed to report [Father's] inappropriate touching of [Y.D.] to law enforcement or Child Protective Services. Such inappropriate touching of [Y.D.] by [Father] and the mother's failure to protect [Y.D.] endangers the children's physical health, safety and well-being and places children at risk of harm, damage, danger, sexual abuse, and failure to protect." (Para. b-1.) While the minute order for the hearing states that paragraph b-1 was dismissed, the juvenile court stated that it was sustained as amended. When there is a discrepancy between the court's oral pronouncement of judgment and the minute order, the oral pronouncement is controlling. (*In re Nia A.* (2016) 246 Cal.App.4th 1241, 1247, fn. 1; *People v. Sharret* (2011) 191 Cal.App.4th 859, 864.)

The court also sustained the allegation that Mother and Father "have a history of engaging in violent altercations. . . .Such violent conduct on the part of the mother against [Father] endangers the children's physical health and safety and places the children at risk of physical harm, damage and danger." (Para. b-5.)

6

in a domestic violence program, sex abuse counseling, and individual counseling to address sexual abuse. It ordered monitored visitation with Isaac with discretion to liberalize.

We take judicial notice of the juvenile court's May 17, 2016 order pursuant to section 364 indicating that Isaac, O.D., M.C., and Ethan had been returned to Mother's home and were receiving family maintenance services. Father was given unmonitored visitation with Isaac.

Father appeals.[3]

## DISCUSSION

### A. *Jurisdictional Findings*

Father first challenges the sufficiency of the evidence to sustain the jurisdictional findings as to him. As Father recognizes, "it is necessary only for the court to find that one parent's conduct has created circumstances triggering section 300 for the court to assert jurisdiction over the child. [Citations.]" (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491.) Therefore, "it is irrelevant which parent created those circumstances. A jurisdictional finding involving the conduct of a particular parent is not necessary for the court to enter orders binding on that parent, once dependency jurisdiction has been established. [Citation.] . . . For this reason, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence. [Citations.]" (*Id*. at p. 1492.)

When, however, "the outcome of the appeal could be 'the difference between father's being an "offending" parent versus a "non-offending" parent,' a finding that could result in far reaching consequences with respect to these and future dependency proceedings, [it is] appropriate to exercise our discretion to consider the appeal on the merits." (*In re Quentin H.* (2014) 230 Cal.App.4th 608, 613; see *In re Christopher M.* (2014) 228 Cal.App.4th 1310, 1316; *In re D.P.* (2014) 225 Cal.App.4th 898, 902.) "[W]e

---

[3] While DCFS filed a notice of cross-appeal, the cross-appeal was subsequently dismissed at DCFS' request.

generally will exercise our discretion and reach the merits of a challenge to any jurisdictional finding when the finding (1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) 'could have other consequences for [the appellant], beyond jurisdiction' [citation]." (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763.)

Here, the jurisdictional finding in paragraph b-1, based on inappropriate touching, makes Father an offending parent, rather than a non-offending parent. The jurisdictional finding in paragraph b-5, while it refers to domestic violence between Father and Mother, focuses on Mother's conduct as a basis for the assertion of jurisdiction, not Father's. Paragraph b-1 served as one of the bases for the dispositional order Father challenges and continues to have an impact on him with respect to visitation. Accordingly, we will address the merits of his appeal as to paragraph b-1.

"We review the juvenile court's jurisdictional findings and disposition orders for substantial evidence. [Citations.] Under this standard '[w]e review the record to determine whether there is any substantial evidence to support the juvenile court's conclusions, and we resolve all conflicts and make all reasonable inferences from the evidence to uphold the court's orders, if possible.' [Citations.]" (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1216; accord, *In re Quentin H.*, *supra*, 230 Cal.App.4th at p. 613.) "Substantial evidence is relevant evidence which adequately supports a conclusion; it is evidence which is reasonable in nature, credible and of solid value. . . . [I]ssues of fact, weight and credibility are the provinces of the juvenile court." (*In re R.C.* (2012) 210 Cal.App.4th 930, 941; accord, *In re J.K.* (2009) 174 Cal.App.4th 1426, 1433.)

To establish jurisdiction under section 300, subdivision (b), "the risk of serious physical harm or illness . . . must exist at the time of the adjudication hearing." (*In re Christopher M.*, *supra*, 228 Cal.App.4th at p. 1318.) A jurisdictional finding "effectively requires a showing that at the time of the jurisdictional hearing the child is at substantial risk of serious physical harm in the future (e.g., evidence showing a substantial risk that

8

past physical harm will reoccur).' [Citation.]" (*In re James R.* (2009) 176 Cal.App.4th 129, 135.) "Although section 300 generally requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing [citations], the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child [citation]. The court may consider past events in deciding whether a child presently needs the court's protection. [Citation.] A parent's '"[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue.' [Citation.]" (*In re Christopher R.*, *supra*, 225 Cal.App.4th at pp. 1215-1216.)

The question before us is whether a single incident of inappropriate touching of a child's sibling eight or nine years earlier demonstrates that a child is at substantial risk of serious physical harm in the future. In *In re Alysha S.* (1996) 51 Cal.App.4th 393, 400 the court concluded that an allegation of inappropriate touching one year earlier was insufficient to allege jurisdiction, in part because there were "no allegations indicating '"the acts may continue in the future. [Citations.]"' [Citation.]" (*Ibid.*)

In *In re Daisy H.* (2011) 192 Cal.App.4th 713, the mother told the DCFS about a single incident of domestic violence occurring two years earlier, although it subsequently appeared that the incident actually occurred seven years earlier. None of the children appeared to have been physically abused, they denied witnessing any domestic violence, and they did not fear the father. The court concluded "[t]he evidence was insufficient to support a finding that past or present domestic violence between the parents placed the children at a current substantial risk of physical harm. The physical violence between the parents happened at least two, and probably seven, years before the DCFS filed the petition. There was no evidence that any of the children were physically exposed to the past violence between their parents and no evidence of any ongoing violence between the parents who are now separated. [Citation.]" (*Id.* at p. 717.)

In contrast to these cases, in *In re J.K.*, *supra*, 174 Cal.App.4th 1426, the father sexually abused his daughter when she was about nine years old and physically abused her when she was about 13. A dependency petition was filed when she was 15. (*Id.* at

9

p. 1429.)  The father's claim there was insufficient evidence his daughter was at substantial risk of future abuse "focuse[d] almost exclusively on the remoteness of the sexual abuse and the fact that he mistreated the child on only two occasions."  (*Id.* at p. 1439.)  In rejecting this claim, we noted, "Father's conduct must be viewed in its proper context.  First, it appears that Minor did not have daily contact or even regular contract with Father; Mother described the visits as 'sporadic.'  Thus, Father's opportunities to inflict harm upon Minor were limited in any event.  Second, Father downplays the physical abuse in this case.  Father broke down the bathroom door and struck Minor, dislocating her shoulder, and this incident occurred only about two years prior to the initiation of proceedings.  This event is not so remote that it can be ignored.  Furthermore, there is no evidence in the record to suggest that Father has taken any steps to address his behavior that led to the abuse.  Father did not present any evidence on his own behalf nor does it appear he made any genuine effort to cooperate with the DCFS to address the issues or even to give his side of the story."  (*Ibid.*)  We concluded that "[g]iven the totality of the circumstances—the severity of the incidents, the fact that there was not a substantial lapse of time between the two instances of abuse or between the last instance and the filing of the petition, Father and Minor's sporadic contact, and Mother's persistent failure to protect the minor, we cannot say the lower court's finding that the Minor was at substantial risk of physical and emotional harm was unreasonable or lacked a sufficient evidentiary support in the record."  (*Id.* at p. 1440.)

Here, there was but a single incident involving Y.D., occurring eight or nine years previously.  She denied any further incidents of inappropriate touching, and Isaac, O.D., and M.C. denied that Father had ever touched them inappropriately.  No evidence was presented demonstrating future risk to Isaac; the court dismissed the section 300, subdivision (j) allegations.  Under the circumstances of this case, we conclude the evidence is insufficient to establish that Isaac is currently at risk of substantial physical harm based on Father's inappropriate touching of Y.D.  (*In re Daisy H.*, *supra*, 192 Cal.App.4th at p. 717; *In re Alysha S.*, *supra*, 51 Cal.App.4th at p. 400.)  Accordingly, the jurisdictional finding in paragraph b-1 must be reversed.

10

**B.** *Dispositional Order*

Father also challenges the juvenile court's requirement that he participate in sex abuse and domestic violence programs.

Section 362, subdivision (d) provides: "The juvenile court may direct any reasonable orders to the parents . . . of the child who is the subject of any proceedings under this chapter as the court deems necessary and proper to carry out this section, . . . [including] a direction to participate in a counseling or education program . . . ." Under Section 362, subdivision (d), "'[t]he juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly. On appeal, this determination cannot be reversed absent a clear abuse of discretion.'" [Citation.]" (*In re A.E.* (2008) 168 Cal.App.4th 1, 4; accord, *In re Daniel B.* (2014) 231 Cal.App.4th 663, 673.)

While "[t]he case plan ordered by the court should be appropriate for each individual family based on facts relevant to that family, and should be designed to eliminate the conditions that led to the dependency in the first instance (*In re Daniel B.*, *supra*, 231 Cal.App.4th at p. 673), "[t]he problem that the juvenile court seeks to address need not be described in the sustained section 300 petition. [Citation.]" (*In re Briana V.* (2015) 236 Cal.App.4th 297, 311; see *In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006-1008.) "In fact, there need not be a jurisdictional finding as to the particular parent upon whom the court imposes a dispositional order. [Citation.]" (*In re Briana V.*, *supra*, at p. 311.) "A jurisdictional finding involving the conduct of a particular parent is not necessary for the court to enter orders binding on that parent, once dependency jurisdiction has been established." (*In re I.A.*, *supra*, 201 Cal.App.4th at p. 1492.) In light of Father's continuing denial of any inappropriate touching and evidence that he participated in the past domestic violence, we find no abuse of discretion in the juvenile court's order that he participate in sexual abuse and domestic violence programs. (*In re Briana V.*, *supra*, at pp. 311-312; *In re Daniel B.*, *supra*, 231 Cal.App.4th at pp. 673-674.)

11

## DISPOSITION

The jurisdictional finding based on inappropriate touching of Y.D., paragraph b-1, is reversed.  In all other respects, the order is affirmed.


ZELON, J.


We concur:


PERLUSS, P. J.


SEGAL, J.