Filed 5/18/23  P. v. Pipkins CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JUSTIN PIPKINS,<br><br>Defendant and Appellant. | F083745<br><br>(Super. Ct. No. BF186664B)<br><br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  John D. Oglesby, Judge.

Brian J. Poore, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans, and Galen N. Farris, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Franson, A.P.J., Peña, J., and DeSantos, J.

Defendant Justin Pipkins was found guilty by a jury for possession of methamphetamine, transportation of methamphetamine, and possession of paraphernalia, and was sentenced to eight years in prison. His sentence included upper term sentences on two counts, one of which was stayed pursuant to Penal Code section 654.[1] On appeal, defendant contends that his sentence must be vacated, and the case remanded for resentencing, because the trial court failed to apply the following ameliorative changes in law: (1) Senate Bill No. 81's (2021–2022 Reg. Sess.) (Senate Bill 81) amendments to section 1385, (2) Senate Bill No. 567's (2021–2022 Reg. Sess.) (Senate Bill 567) amendments to section 1170, subdivision (b), and (3) Assembly Bill No. 518's (2021–2022 Reg. Sess.) (Assembly Bill 518) amendments to section 654. Alternatively, defendant contends that (4) assuming he forfeited his claims of error, his trial counsel's failure to apprise the court of the ameliorative changes in law constituted ineffective assistance of counsel, and (5) the cumulative effect of the trial court's failure to apply the ameliorative changes in law caused him prejudice. Finally, defendant contends that (6) the trial court erred in staying the prison term on count 1 without also staying the related fines and fees imposed in relation to the same count. The People respond that defendant forfeited his first three claims of error and that defendant's first five claims of error fail on the merits. The People agree that the abstract of judgment should be modified to reflect that the fines and fees imposed in connection with count 1 are stayed. We order the trial court to issue an amended abstract of judgment reflecting that the fines and fees imposed in connection with count 1 are stayed. In all other respects, we affirm.

## PROCEDURAL SUMMARY

On November 29, 2021, the Kern County District Attorney filed an amended information charging defendant with possession of methamphetamine (Health & Saf. Code, § 11378; count 1), transportation of methamphetamine (Health & Saf. Code,

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

2.

§ 11379, subd. (a); count 3), and misdemeanor possession of drug paraphernalia (Health & Saf. Code, § 11364; count 4).[2]  As to counts 1 and 3, the amended information alleged that defendant had suffered a prior "strike" conviction within the meaning of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)).

On December 3, 2021, the jury found defendant guilty on all counts.  On the same date, at a bifurcated proceeding outside the presence of the jury, the trial court found the prior strike allegation to be true in reliance on a certified copy of defendant's RAP sheet.

On January 11, 2022, the trial court denied defendant's request to strike his prior strike conviction pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).  The court then sentenced defendant to an aggregate term of eight years as follows:  on count 3, eight years (the upper term of four years doubled due to the prior strike conviction); on count 1, six years (the upper term of three years doubled due to the prior strike conviction), stayed pursuant to section 654; and on count 4, 180 days, concurrent with the term on count 3.  As to each count, the court also imposed a $50 drug laboratory fee pursuant to Health and Safety Code section 11372.5 and a $100 drug program fee pursuant to Health and Safety Code section 11372.7.  The court did not explicitly order those fees stayed on count 1 pursuant to section 654.

On the same date, defendant filed a notice of appeal.

## FACTUAL SUMMARY

On July 27, 2021, two Kern County Sheriff's deputies observed codefendant Gary Mills, who appeared to be transient, stand at the front driver side door of defendant's sedan, lean in, remove a closed hand from the vehicle and place his hand into the right cargo pocket of his shorts.  The officers left their patrol vehicle and approached defendant and codefendant.  As they approached, one of the officers saw codefendant

---

[2]  The amended information also charged a codefendant with possession of a firearm by a felon and possession of methamphetamine while armed with a firearm.

3.

counting cash. The officer then searched codefendant's right cargo pocket and discovered a bag of what was later determined to be approximately 28 grams of methamphetamine and a hypodermic needle. In addition, the officer found codefendant had $120 cash in his hand, and approximately $100 cash in his right front pocket. In codefendant's backpack, the officer discovered a loaded firearm, a digital scale, a spoon with drug residue, and three syringes.

Defendant was the driver of the sedan, which held two other passengers. One of the passengers possessed 30.9 grams of methamphetamine and $100 in cash. Defendant possessed $1,805 in cash. In the cupholder between the two front seats of the sedan, officers found 0.3 grams of methamphetamine. Officers further discovered a backpack in the vehicle, containing defendant's mail and a methamphetamine pipe with residue.

## DISCUSSION

### I. Senate Bill 81

Defendant contends that his sentence should be vacated, and the matter should be remanded, because the trial court did not understand the discretion granted to it by Senate Bill 81's addition of subdivision (c) to section 1385 and that it was required to give great weight to the mitigating factors listed in subdivision (c) in determining whether to strike defendant's prior strike conviction. The People respond that the plain language of the statute unambiguously applies only to enhancements, and the Three Strikes law is an alternative sentencing scheme, not an enhancement. We agree with the People.

Effective January 1, 2022, Senate Bill 81 amended section 1385 to add subdivision (c) (Stats. 2021, ch. 721, § 1; Cal. Const., art. IV, § 8, subd. (c); Gov. Code, § 9600, subd. (a)), which provides, in part:

> "(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute.

"(2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the [listed] mitigating circumstances … are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(1)–(2).)

The mitigating circumstances listed include that the current offense is not a violent felony, and that the enhancement is based on a prior conviction that is over five years old. (§ 1385, subd. (c)(2)(F), (H).) Defendant was sentenced after the effective date of Senate Bill 81, his present felony convictions were not violent offenses, and his prior strike conviction was more than five years old. It is further undisputed that the trial court did not discuss subdivision (c) of section 1385 in imposing defendant's sentence.

The People argue that subdivision (c) of section 1385 "by its plain language … does not apply to [defendant's] sentence [because it] … includes no enhancements." Rather, the People argue, defendant's sentence as modified by the Three Strikes law was a result of "an alternative sentencing scheme for the current offense rather than an enhancement." (*Romero*, *supra*, 13 Cal.4th at p. 527.)

Whether the amendments to section 1385 apply to a prior strike conviction is a question of statutory interpretation, which we review de novo. (*People v. Tirado* (2022) 12 Cal.5th 688, 694.) To resolve which interpretation of the statute is correct, "we are guided by familiar canons of statutory construction. '[I]n construing a statute, a court [must] ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.] In determining that intent, we first examine the words of the respective statutes: 'If there is no ambiguity in the language of the statute, "then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." [Citation.] "Where the statute is clear, courts will not 'interpret away clear language in favor of an ambiguity that does not exist.' [Citation.]" ' [Citation.] If, however, the terms of a statute provide no definitive answer, then courts may resort to extrinsic

5.

sources, including the ostensible objects to be achieved and the legislative history. [Citation.] 'We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' " (*People v. Coronado* (1995) 12 Cal.4th 145, 151.)

Under section 1385, subdivision (a), the trial court "may[,] … in furtherance of justice, order an action to be dismissed." (*People v. Williams* (1998) 17 Cal.4th 148, 151 (*Williams*).) This authority under section 1385, subdivision (a) includes the power to "strike or vacate an allegation or finding under the Three Strikes law that a defendant has previously been convicted of a serious and/or violent felony …." (*Williams*, *supra*, 17 Cal.4th at p. 158.)

Effective January 1, 2022, Senate Bill 81 amended section 1385 to add specific mitigating factors the trial court must consider when deciding whether to strike "an enhancement" from a defendant's sentence in the interest of justice. (§ 1385, subd. (c); Stats. 2021, ch. 721, § 1; *People v. Sek* (2022) 74 Cal.App.5th 657, 674.) Subdivision (c) does not use the broader language of subdivision (a) that has been interpreted to mean that a trial court may dismiss a prior strike conviction. Subdivision (c) permits striking of an "enhancement," not an "action."

"Ordinarily words used in a statute are presumed to be used in accordance with their established legal or technical meaning." (*People v. Carter* (1996) 48 Cal.App.4th 1536, 1540.) The Legislature did not define the word "enhancement" in section 1385. The term "enhancement" has a well-established technical meaning in California law. (*Romero*, *supra*, 13 Cal.4th at pp. 526–527.) "A sentence enhancement is 'an *additional term* of imprisonment added to the base term.' [Citation.]" (*People v. Jefferson* (1999) 21 Cal.4th 86, 101; see *People v. Tirado*, *supra*, 12 Cal.5th at p. 695, fn. 9; Cal. Rules of Court, rule 4.405(5).) It is equally well-established that application of the Three Strikes law is not the application of an enhancement; it is an

6.

alternative sentencing scheme for the current offense. (*Romero*, at p. 527; *People v. Williams* (2014) 227 Cal.App.4th 733, 744.) We presume the Legislature was aware of, and acquiesced in, this established judicial definition of enhancement as well as the distinction between an enhancement and an alternative sentencing scheme like the Three Strikes law. (*People v. Atkins* (2001) 25 Cal.4th 76, 89–90.) Because the statutory language is clear and unambiguous, we follow its plain meaning and do not consider the legislative history.[3] (*People v. Canty* (2004) 32 Cal.4th 1266, 1277.) The plain language of section 1385, subdivision (c) applies only to an enhancement, and imposition of a sentence that includes a prior strike conviction is not an enhancement, but part of the Three Strikes alternative sentencing scheme. Section 1385, subdivision (c)'s provisions regarding enhancements do not apply to prior strike conviction allegations.

## II. Senate Bill 567

Defendant contends that we must vacate the sentence and remand the matter because he did not admit, and the jury did not find true, the facts underlying the circumstances in aggravation that the trial court relied upon in imposing the upper term. The People agree that Senate Bill 567 applied to defendant at sentencing but argue that defendant forfeited any error and, in the alternative, any error in imposition of the upper term is harmless beyond a reasonable doubt. We reach the merits of defendant's claim

---

[3]     Even if we concluded that there was any ambiguity in the term "enhancement"—which we do not—consideration of the legislative history would not change our conclusion. As the People correctly note, the Assembly Committee on Public Safety Report on Senate Bill 81 explicitly recognized that "[a]n enhancement differs from an alternative penalty scheme" like "the Three Strikes [l]aw …." (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 81 (2021–2022 Reg. Sess.) as amended Apr. 27, 2021, p. 5.) "The presumption created by this bill applies to enhancements, but does not encompass alternative penalty schemes." (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 81 (2021–2022 Reg. Sess.) as amended Apr. 27, 2021, p. 6.) Therefore, even if we considered the legislative history, we would not reach a different conclusion.

7.

and conclude that the court did not comply with section 1170, subdivision (b) as modified by Senate Bill 567 but the error was harmless.

Because defendant contends that, assuming the issue is forfeited, his counsel was ineffective in failing to raise the issue below, we exercise our discretion to reach the merits of his claim to forestall the claim of ineffective assistance of counsel. (See *Williams*, *supra*, 17 Cal.4th at p. 161, fn. 6 [an appellate court has authority to reach a forfeited claim]; *People v. Crittenden* (1994) 9 Cal.4th 83, 146 [reviewing court may exercise discretion to consider forfeited claims to forestall ineffective assistance of counsel arguments].)

The parties agree that the trial court imposed an upper term sentence without complying with the requirements of section 1170, subdivision (b). As we explain below, to find that any error was harmless we would have to conclude (1)(a) beyond a reasonable doubt that the jury would have found beyond a reasonable doubt that the facts underlying at least one aggravating circumstance were true,[4] and (1)(b) that there is no reasonable probability the jury would not have found the remaining circumstances true beyond a reasonable doubt, or, if fewer than all circumstances are provable pursuant to part (1)(b) of this analysis, (2) that there is no reasonable probability the trial court would have imposed a lesser term based on the aggravating circumstances that would have been provable to the jury beyond a reasonable doubt.

For the following reasons, we conclude the sentence does not comply with the requirements of section 1170, subdivision (b), but the error was harmless.

---

[4] Alternatively, this step is satisfied if, in imposing the upper term, the trial court relied upon an aggravating circumstance the underlying facts of which defendant admitted, or the court relied on defendant's prior convictions as an aggravating circumstance in consideration of a certified record of defendant's convictions.

This first step of the harmless error inquiry is demanded by the Sixth Amendment. If it is not met, the analysis stops, and we conclude that the error was not harmless because the sentence violates the Sixth Amendment.

## A. Additional Background

The trial court read and adopted the probation officer's recommendation regarding the following four circumstances in aggravation:

> "[(1)] [D]efendant's prior convictions are numerous. … [(2)] [D]efendant has served six prior prison terms. … [(3)] [D]efendant was on Post Release Community Supervision when the crime was committed. And … [(4)] defendant's prior performance on misdemeanor probation, parole, and Post Release Community Supervision were unsatisfactory in that he violated terms and re-offended."

Based on those factors, the trial court indicated it would impose the upper term. The court then further commented:

> "[The codefendant] was a street level dealer. [Defendant] was the mid-level dealer and I think we haven't–I'm not using this to evaluate [codefendant's] case but I'm using this to evaluate [defendant's] case and based upon the facts I think that's a reasonable inference. Regardless, he was convicted of sales of a controlled substance with a lengthy criminal history that includes previous sales.

> "It is expected that as people … age … there is a certain level where we expect criminality to significantly decrease. But [defendant] apparently is defying that statistic and continu[ed] on in a criminal behavior and sales of a controlled substance that this court considers to be a significant amount that was involved in this particular case."

The trial court then imposed the upper term on counts 3 and 1. Count 1 was stayed pursuant to section 654.

Defendant did not admit, and the jury did not find true, any of the aggravating circumstances relied upon by the trial court in imposing the upper term. However, the record reflects that the court relied upon a certified record documenting four of defendant's prior convictions—receiving stolen property (§ 496, subd. (a)) and forgery (§ 484f, subd. (b)) in 1998, and first degree burglary (§ 460, subd. (a)) and forgery (§ 484f, subd. (b)) in 2001—in making findings regarding his prior strike conviction.

The trial court also had before it a certified copy of defendant's history of incarceration with the Department of Corrections and Rehabilitation (CDCR) between 1998 and 2007. CDCR records showed that defendant was incarcerated on his 1998 offenses from October 9, 1998, to June 4, 1999, when he was paroled. On February 7, 2000, Defendant was returned to custody on a parole violation and was released again on parole on August 12, 2000. On February 9, 2001, defendant returned to custody on his 2001 offenses; he was paroled on those offenses on August 31, 2003, and, following another parole violation, was returned to custody on March 1, 2004. Defendant was next paroled on February 16, 2005; after another parole violation, he returned to custody on July 28, 2005. Defendant was paroled again on September 30, 2005, and, following another parole violation, was returned to custody on November 28, 2005. On March 17, 2006, defendant was again paroled; while on parole, he absconded from August 30, 2006, through October 8, 2006, when defendant was reinstated on parole. On March 29, 2007, defendant was returned to custody after another parole violation. Defendant was paroled a final time on April 19, 2007, and discharged from parole on October 9, 2007.

The trial court also had before it the probation officer's report, which detailed defendant's 11 prior felony convictions (including the four convictions contained in the certified record of conviction discussed *ante*), which resulted in six prison terms, three prior misdemeanor convictions, and one prior out-of-state conviction for carrying a concealed weapon with no offense level specified. The probation officer's report also detailed that defendant had been granted probation once and had violated it, had violated parole four times (the certified record of conviction indicated defendant had in fact violated parole five times), and had violated postrelease community supervision (PRCS) three times. The probation officer's report further indicated that defendant had not completed his PRCS at the time of his offenses in this case.

**B. Analysis**

From March 30, 2007, to December 31, 2021, California's determinate sentencing law specified that "[w]hen a judgment of imprisonment [wa]s to be imposed and the statute specifie[d] three possible terms, the choice of the appropriate term … rest[ed] within the sound discretion of the court." (§ 1170, former subd. (b).)

Effective January 1, 2022, Senate Bill 567 amended section 1170, subdivision (b). (Stats. 2021, ch. 731, § 1.3.) Section 1170, subdivision (b)(2) now provides, "[t]he court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).) As an exception to the general rule, a trial court is permitted to rely upon a certified record of conviction to determine prior criminality for purposes of sentencing without submitting the prior conviction to a jury. (§ 1170, subd. (b)(3).)

Defendant was sentenced on January 11, 2022. Therefore, as the parties agree, the amendments to section 1170, subdivision (b) made by Senate Bill 567 applied.

In this case, the jury made no findings regarding the aggravating circumstances. However, the trial court had before it a certified record of defendant's two 1998 convictions and two 2001 convictions. Section 1170, subdivision (b)(3) permitted the court to rely on the certified record of conviction to prove defendant's prior convictions for purposes of proving aggravating circumstances. While the court considered more than the four prior convictions identified in the certified record of conviction, three or more prior convictions is numerous in this context. (See *People v. Searle* (1989) 213 Cal.App.3d 1091, 1098 [three prior convictions qualify as numerous].) As a result, the first aggravating circumstance relied upon by the court—that defendant had suffered

11.

numerous prior convictions—was proved in compliance with amended section 1170, subdivision (b).[5]

The certified records before the trial court documented defendant's incarceration record between 1998 and 2007, including violations of parole. Similarly, the probation officer's report documented that defendant had served six prior prison terms, repeatedly violated parole, probation, and PRCS, and was on PRCS at the time of the offenses. However, section 1170, subdivision (b)(3) does not permit the court to rely on a certified record of conviction to find true any fact other than the fact of defendant's prior convictions. Moreover, none of those facts were found true by the jury and the probation officer's report was not a certified record of conviction. The facts underlying the second through fourth circumstances in aggravation were therefore not proved in compliance with section 1170, subdivision (b).

Insofar as the trial court considered defendant's position as a "mid-level [drug] dealer" and that he possessed a "significant amount" of methamphetamine as aggravating circumstances, the facts underlying those circumstances were not found true by the jury.

Despite only one of the aggravating circumstances having been proved in compliance with section 1170, subdivision (b)(2) and (3), the upper term was imposed on counts 3 and 1. Imposition of the upper term on counts 3 and 1 was not in compliance

---

[5]  We also note that defendant's counsel acknowledged in the sentencing memorandum that, subsequent to defendant's prior strike conviction, he suffered felony convictions on March 7, 2008, June 11, 2014, and October 18, 2017. At the sentencing hearing, defendant's counsel also acknowledged that defendant had "been to prison a few times since" the prior strike conviction. Even if the convictions for which a certified record of conviction was submitted were not sufficient for the trial court to properly conclude that defendant's prior convictions were numerous, in light of the absence of any objection to the probation officer's summary of defendant's prior convictions and the acknowledgement of three additional prior felony convictions in defendant's sentencing memorandum, we would conclude beyond a reasonable doubt that the jury would have found true beyond a reasonable doubt that defendant had suffered numerous prior convictions. (*People v. Dunn* (2022) 81 Cal.App.5th 394, 409–410 (*Dunn*).)

with section 1170, subdivision (b). Therefore, unless imposition of the upper term on counts 3 and 1 was harmless, the sentence must be vacated and the matter remanded to the trial court for resentencing in compliance with section 1170, subdivision (b).

The People contend that any error is harmless because all factors were provable to a jury beyond a reasonable doubt. We agree with the People.

This court recently articulated the standard for harmless error in the Senate Bill 567 context. (*Dunn*, *supra*, 81 Cal.App.5th at pp. 409–410.) We apply that standard:

> "The reviewing court determines (1)(a) beyond a reasonable doubt whether the jury would have found one aggravating circumstance true beyond a reasonable doubt[6] and (1)(b) whether there is a reasonable probability that the jury would have found any remaining aggravating circumstance(s) true beyond a reasonable doubt. If all aggravating circumstances relied upon by the trial court would have been proved to the respective standards, any error was harmless. If not, the reviewing court moves to the second step of [*People v.*] *Lopez* [(2022) 78 Cal.App.5th 459], (2) whether there is a reasonable probability that the trial court would have imposed a sentence other than the upper term in light of the aggravating circumstances provable from the record as determined in the prior steps. If the answer is no, the error was harmless. If the answer is yes, the reviewing court vacates the sentence and remands for resentencing consistent with section 1170, subdivision (b)." (*Dunn*, *supra*, 81 Cal.App.5th at pp. 409–410.)

With that standard in mind, we revisit the aggravating circumstances relied upon by the trial court.

We begin by noting that all the aggravating circumstances mentioned by the trial court before it indicated it would impose the upper term were historical considerations

---

**6** "Alternatively, this step is satisfied if the trial court relied upon an aggravating circumstance that relied only upon the fact of defendant's prior convictions and a certified record of defendant's convictions was admitted, or defendant admitted the facts underlying an aggravating circumstance. [¶] … [S]tep (1)(a) or one of its two alternatives must be satisfied to avoid offending the Sixth Amendment …. If not, the error is not harmless; the sentence must be vacated and the matter remanded to the trial court for resentencing consistent with section 1170, subdivision (b)." (*Dunn*, *supra*, 81 Cal.App.5th at p. 410, fn. 13.)

13.

rather than considerations related to the nature of the present offense. Further, defendant and his counsel were provided a copy of the probation officer's report, a certified record of four of defendant's felony convictions, and a certified record of defendant's incarceration history between 1998 and 2007. Collectively, those documents detailed defendant's extensive criminal history, incarceration record, probation, parole, and PRCS history, and active PRCS status. (See § 1203d.) The probation report further reflects that the information regarding defendant's criminal history was obtained from the California Justice Information Services, the Department of Justice's Criminal Identification and Information database, the Department of Motor Vehicles' database, and defendant's juvenile records, among other sources.

Defendant's sentencing memorandum noted that defendant had been convicted of felony offenses three times after his 2001 strike conviction. At the sentencing hearing, defendant's counsel commented that defendant had been sentenced to prison "a few times" since his prior strike conviction. Neither defendant nor his counsel contested the accuracy of any of the facts underlying the aggravating circumstances as outlined by the probation officer. There is no logical reason that defendant and his counsel would not have challenged the accuracy of his prior convictions, probation, parole, PRCS, prison commitment records, and active PRCS status if not true. If any of that information was incorrect, defendant could have proved that it was untrue with relative ease.

In short, the evidence contained in the certified record of conviction and the absence of any disagreement by defendant and his counsel convince us beyond a reasonable doubt[7] that a jury would have found true beyond a reasonable doubt the

---

[7]    We note that under *Dunn*, we are only required to find beyond a reasonable doubt that the jury would have found true beyond a reasonable doubt one aggravating circumstance. As to the other aggravating circumstances, we need only conclude that there is no reasonable probability the jury would not have found those factors true. (*Dunn*, *supra*, 81 Cal.App.5th at pp. 409–410.)

14.

second, third, and fourth aggravating circumstances: that defendant had served six prior prison terms, was on PRCS at the time of the offenses, and had not satisfactorily completed parole, probation, or PRCS. Based on those circumstances, the trial court indicated that it would impose the upper term. For that reason, we need not consider whether the jury also would have found true that defendant's offense included a large amount of methamphetamine or whether he was more culpable because he was a "mid-level [drug] dealer," both of which were only discussed after the court found true the first four aggravating circumstances and indicated that it would impose upper-term sentences. Therefore, even without those circumstances, we conclude beyond a reasonable doubt that there was no reasonable probability that the court would have imposed sentences on counts 3 and 1 other than the upper term. For those reasons, we conclude that noncompliance with section 1170, subdivision (b) was harmless.

## II. Section 654

Defendant next contends that the trial court did not understand that it had the discretion to stay the sentence on count 3 and instead impose the sentence on count 1. The People argue that defendant forfeited the issue by failing to raise it below, disagree that the court misunderstood its discretion, and contend that, even if the court misunderstood its discretion, the error was harmless because the court indicated it would not have exercised its discretion differently by imposing the maximum possible sentence. We agree with the People that any error was harmless.

Again, because defendant contends that, assuming the issue is forfeited, his counsel was ineffective in failing to raise the issue below, we exercise our discretion to reach the merits of his claim to forestall the claim of ineffective assistance of counsel. (See *Williams*, *supra*, 17 Cal.4th at p. 161, fn. 6; *People v. Crittenden*, *supra*, 9 Cal.4th at p. 146 [reviewing court may exercise discretion to consider forfeited claims to forestall ineffective assistance of counsel arguments].)

15.

### A. Additional Background

At the sentencing hearing, defendant's counsel requested that the trial court strike defendant's prior strike conviction and impose the upper term of four years (without the strike) on count 3. Instead, the court declined to strike the prior strike conviction, set count 3 as the principal term and imposed the maximum sentence on that count, and stayed the sentence on count 1 pursuant to section 654. The court also imposed the maximum sentence of 180 days on count 4, concurrent with the sentence on count 3. Count 3 carried a maximum term of imprisonment of four years (doubled to eight due to the prior strike conviction), count 1 carried a maximum term of imprisonment of three years (doubled to six due to the prior strike conviction), and count 4 carried a maximum term of 180 days. (§§ 19, 667, subd. (e)(1), 1170, subd. (h); Health & Saf. Code, §§ 11364, 11379, subd. (a), 11378.)

The trial court did not discuss Assembly Bill 518 or explicitly state that it had the discretion to stay count 1 *or* count 3.

### B. Analysis

Prior to January 1, 2022, section 654, subdivision (a) provided that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Effective January 1, 2022, Assembly Bill 518 amended section 654, subdivision (a), to permit an act or omission punishable under two or more provisions of law to "be punished under either of such provisions." (Stats. 2021, ch. 441, § 1.)

" 'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court' " and where the defendant has been sentenced in the absence of informed discretion, "the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' "

(*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391; accord, *People v. Flores* (2020) 9 Cal.5th 371, 431–432.)

The parties disagree regarding whether the trial court understood its discretion to stay the eight-year sentence on count 3 rather than the six-year sentence on count 1. However, we need not resolve that issue because, even assuming the court did not understand its discretion, it had the discretion to impose a six-year term on count 3 yet exercised its discretion to impose the upper term of eight years instead. The sentence trifecta on count 3 permitted the court to impose the lower term of four years, the middle term of six years, or the upper term of eight years. (§ 667, subd. (e)(1); Health & Saf. Code, § 11379, subd. (a).) The court instead exercised its discretion to impose the maximum sentence on each count. The court understood it had the discretion to impose a lesser sentence but elected not to do so. Moreover, the court refused to strike the prior strike conviction, found circumstances in aggravation but no circumstances in mitigation; and emphasized that defendant was a "mid-level" drug dealer while his codefendant was a "street-level" dealer, that defendant was "convicted of sales of a controlled substance with a lengthy criminal history that includes previous sales," and that it considered the quantity of controlled substance at issue in this case "to be a significant amount." Based on the court's exercise of discretion in imposing sentence and its comments at sentencing, the record clearly indicates that the court would have reached the same conclusion had it been aware of its discretionary powers.

## IV. Ineffective Assistance of Counsel and Cumulative Error

Because we have concluded that each of the purported errors either were not error or were harmless, defendant's ineffective assistance of counsel claim fails for lack of prejudice.

Next, we conclude that defendant suffered no actionable cumulative effect from the harmless errors we identified above. "In theory, the aggregate prejudice from several different errors occurring *at trial* could require reversal even if no single error was

prejudicial by itself. '[A] series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error.' " (*In re Reno* (2012) 55 Cal.4th 428, 483, italics added; accord, *People v. Kocontes* (2022) 86 Cal.App.5th 787, 891–892; *People v. Sorden* (2021) 65 Cal.App.5th 582, 618.) " 'The "litmus test" for cumulative error "is whether defendant received due process and a fair trial." ' " (*People v. Thomas* (2021) 64 Cal.App.5th 924, 971.)

Here, the harmless errors—insofar as error occurred—related to Senate Bill 567 and Assembly Bill 518 were separate from each other and did not result in any cumulative effect. Defendant received due process and a fair trial. We find no cumulative effect of error that would warrant relief.

## V. Failure To Stay Fines And Fees Related to Count 1

On counts 1, 3, and 4, the trial court imposed $50 drug laboratory fees (Health & Saf. Code, § 11372.5) and $100 drug program fees (Health and Saf. Code, § 11372.7). The court also stayed the sentence on count 1. However, the abstract of judgment reflects imposition of a total of $150 in drug program fees and $300 in drug laboratory fees.

The parties agree, as do we, that fines and fees imposed in connection with a stayed sentence must also be stayed. (*People v. Sharret* (2011) 191 Cal.App.4th 859, 869–870.) It appears to have been the trial court's intention to have stayed the fees on count 1 as was required. In any event, those fees must be stayed. We therefore order the trial court to issue an amended abstract of judgment reflecting that the fines and fees related to count 1 were stayed.

## DISPOSITION

The judgment is affirmed. The trial court is directed to issue an amended abstract of judgment reflecting that all fines and fees associated with count 1 are stayed. The court shall forward a copy of the amended abstract of judgment to the appropriate entities.