Filed 12/3/25  P. v. Torres CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BLANCA TORRES,<br><br>    Defendant and Appellant. | H051725<br>(Santa Clara County<br> Super. Ct. No. B1793599) |

This is defendant Blanca Torres's second appeal arising from her 2018 conviction by jury for committing seven sexual offenses against a four-year-old child.  This appeal follows a resentencing proceeding conducted on remand after Torres's initial direct appeal (first appeal).

In Torres's first appeal, a different panel of this court affirmed Torres's convictions but reversed the judgment, vacated Torres's 55 years to life sentence, and remanded the matter for resentencing.  (*People v. Garcia* (Nov. 9, 2022, H046635) [nonpub. opn.] (*Garcia*).[1]

---

[1] We considered Torres's first appeal together with the direct appeal of her jointly tried codefendant Hector Garcia.  (See *Garcia*, *supra*, H046635.)  The current appellate record does not include the reporter's transcripts of Torres's and Garcia's joint trial, and neither party in this appeal has requested that the record be augmented to include those transcripts or that

On remand following Torres's first appeal, the trial court resentenced Torres to a total term of 25 years to life in prison. That sentence included four determinate prison terms for violations of Penal Code[2] section 288, subdivision (b)(1) (prohibiting a forcible lewd or lascivious act), which the court stayed pursuant to section 654.

In this appeal, Torres contends the abstract of judgment and resentencing minute order do not accurately reflect her custody credits. Torres further contends there is a discrepancy between the trial court's oral resentencing pronouncement and the abstract and minute order concerning a restitution fine and a sex offender fine.

The Attorney General responds by raising a separate claim that Torres's sentence is unauthorized, and this matter should be remanded for resentencing because, by staying the terms imposed on the four forcible lewd or lascivious act counts, the trial court failed to punish Torres at all for one of those offenses. The Attorney General additionally contends that on remand the trial court should properly calculate and document Torres's custody credits and the mandatory fines, fees, and assessments.

For the reasons explained below, we affirm the judgment and discern no error in the trial court's oral pronouncement of sentence. Nevertheless, we direct the trial court to amend the resentencing minute order and abstract of judgment to correct errors in those documents.

---

this court take judicial notice of the prior appellate record. On our own motion, we take judicial notice of our prior unpublished opinion. (See Evid. Code, §§ 452, subd. (d), 459.) Further, we cite that opinion to explain the procedural and factual background of this matter. (See *People v. Heard* (2022) 83 Cal.App.5th 608, 613, fn. 3; *In re Nelson* (2020) 56 Cal.App.5th 114, 119, fn. 2; *In re W.R.* (2018) 22 Cal.App.5th 284, 286, fn. 2.)

[2] All further unspecified statutory references are to the Penal Code.

## I. FACTS AND PROCEDURAL BACKGROUND

A. *Trial and First Appeal*

A description of the evidence presented at Torres's and Garcia's joint trial (before separate juries) appears in this court's prior opinion. (*Garcia, supra*, H046635.) We incorporate into this opinion the account of the trial evidence set forth in our prior opinion. (*Ibid.*)

In October 2018, the jury found Torres guilty of seven sexual crimes committed on or about and between January 1, 2017, and March 31, 2017, against four-year-old A. Doe (hereafter A.): sexual intercourse with a child 10 years of age or younger (§ 288.7, subd. (a); count 1), two counts of oral copulation or sexual penetration with a child 10 years of age or younger (§ 288.7, subd. (b); counts 3–4), and four counts of forcible lewd or lascivious act on a child under age 14 (§ 288, subd. (b)(1); counts 5–8). (*Garcia, supra*, H046635.) The jury failed to reach a verdict on an additional count of sexual intercourse with a child 10 years of age or younger (§ 288.7, subd. (a); count 2). The trial court declared a mistrial on that count and dismissed it. (*Garcia, supra*, H046635.)

In December 2018, the trial court sentenced Torres to 25 years to life in prison on count 1, plus consecutive terms of 15 years to life on counts 3 and 4. The court also imposed and stayed, pursuant to section 654, 10-year upper terms on each of the remaining counts (counts 5–8). (*Garcia, supra*, H046635.)

On November 9, 2022, this court affirmed Torres's convictions but remanded for a full resentencing based on postjudgment changes to sentencing laws.[3] (*Garcia, supra*, H046635.)

---

[3] In Torres's first appeal, the Attorney General contended the trial court " 'imposed and stayed four terms under . . . section 654, when it should

3

B. *Resentencing Hearing on Remand*

In October 2023, Torres's defense counsel filed a sentencing memorandum. Counsel presented mitigating information about Torres's history of being victimized and childhood trauma, as well her efforts to "better herself" while incarcerated. Regarding counts 5 through 8, counsel explained the prosecutor had argued at trial that those counts "were to be treated as lesser included offenses to [c]ounts 1 through 4" and "if the jury found Ms. Torres guilty of [c]ounts l through 4, then she was automatically guilty of [c]ounts 5 through 8." Counsel similarly asserted that the prosecutor's "arguments to the jury implied that [c]ount 5 was satisfied with the same conduct as [c]ount l, [c]ount 6 was satisfied with the same conduct as [c]ount 2, and so on." Counsel contended the trial court had "discretion to impose one of the life counts and stay imposition of the remaining counts in the interest of justice."

The district attorney likewise filed a sentencing memorandum. The district attorney asked the trial court to impose the same sentence it had imposed at Torres's original sentencing. The district attorney urged the court to decline to exercise its newly authorized discretion under section 654 to impose unstayed determinate terms on counts 5 through 8 and stay the indeterminate life terms on counts 1, 3, and 4. The district attorney further

_____

have imposed and stayed only three of them because Torres was being doubly punished on only three rather than on four of the [c]ounts. Under the sentencing as it currently exists, Torres is not being punished at all for one of the [c]ounts of forcible lewd and lascivious conduct.' " (*Garcia, supra,* H046635.) This court did not address the Attorney General's contention in our prior opinion because we decided, based on another issue, that Torres's sentence should be vacated and the matter remanded for a full resentencing. Nonetheless, we explained that "the People may raise any argument regarding the impropriety of staying the punishment for all of Torres's convictions on counts 5 through 8" at Torres's resentencing. (*Ibid.*)

argued that several aggravating factors (see Cal. Rules of Court, rule 4.421) supported imposition of upper determinate terms on counts 5 through 8. In its sentencing memorandum, the district attorney did not argue that the trial court should impose an unstayed sentence on count 6.

On November 14, 2023, the trial court held a resentencing hearing. Torres's defense counsel asked the court to impose a total sentence of 32 years, consisting of four, consecutive, eight-year middle determinate terms for counts 5 through 8. Additionally, regarding the factual circumstances underlying each count and the application of section 654, defense counsel asserted that "the jury wasn't told specifically this count pertains to this exact conduct, this count pertains to this exact conduct." Counsel added, "There may have been findings that some of the conduct was factually [section] 654" and "[c]ounts 3 and 4 could have been [section] 654 to [c]ount 1." In turn (and alternatively to counsel's request for a 32-year sentence), counsel urged the court to impose only one unstayed, indeterminate term for either count 3 or count 4 (along with the indeterminate term on count 1), if the court were inclined to "impose the maximum possible."

The trial court rejected defense counsel's argument regarding the application of section 654 to counts 1, 3, and 4. Further, the court declined the defense request to impose four, unstayed determinate terms on counts 5 through 8 and stay the indeterminate life terms on counts 1, 3, and 4 under section 654. Rather, the court found it was appropriate to exercise its discretion "to run two of the indeterminate terms concurrent to one of the indeterminate terms." Accordingly, the court imposed an aggregate sentence of 25 years to life in prison on counts 1, 3, and 4, comprising 25 years to life on count 1, concurrent with 15 years to life terms on counts 3 and 4. The court also imposed and stayed, pursuant to section 654, eight-year

5

determinate prison terms on each of the remaining counts (counts 5–8).  The court did not articulate a reason for staying the punishments on counts 5 through 8.

The trial court reiterated that at Torres's original sentencing on December 17, 2018, it had awarded 488 days of actual custody credits (actual credits), plus 73 days pursuant to section 2933.1 (local conduct credits).  The court stated that since the original sentencing date, Torres had accrued an additional 1,793 days of actual credits and ordered the California Department of Corrections and Rehabilitation (CDCR) to determine Torres's good time/work time credits for that period.[4]

Regarding fines, fees, and assessments, Torres's defense counsel pointed out that Torres has been in custody for some time.  The trial court responded by saying, "There's a restitution fine of $5,000 I'm going to impose, but *suspend execution*.[5]  An additional restitution fine of an equal amount is imposed but suspended under [section] 1202.45."  (Italics added.)  The court also said, "I'm going to impose a $300 [sex offender] fine plus penalty

---

[4] The clerk's resentencing minute order reflects the 1,793 days of actual credits awarded by the trial court, but the abstract of judgment incorrectly states the actual credits for time served as 1,743 days (i.e., 50 less days than that which the court awarded).  Additionally, the minute order and the abstract both mention the trial court's direction to CDCR regarding the calculation of good time/work time credits (stating that CDCR is to "calculate" or "calc" "good time credits").  However, neither the minute order nor the abstract mention the local conduct credits that the trial court reiterated as previously awarded at Torres's original sentencing.

[5] The resentencing minute order and the abstract of judgment both indicate the imposition of a $5,000 restitution fine under section 1202.4, subdivision (b), but those documents do not mention any suspension of execution.

assessment under [section] 290.3, *suspend execution and waive the balance of the fees*."[6] (Italics added.)

Torres appealed from the resentencing; the People did not.[7]

## II. DISCUSSION

Torres raises two claims of error. The first claim concerns the inaccurate rendition of her custody credits in the resentencing minute order and abstract of judgment. The second claim contends there is a discrepancy between the trial court's sentencing pronouncement and the abstract and minute order concerning the restitution fine and the sex offender fine and requests that this court strike those fines.

The Attorney General responds to Torres's two claims and raises an additional claim that Torres's sentence is unauthorized because the trial court improperly stayed the punishment on count 6 under section 654.

We begin by addressing the Attorney General's section 654 argument, followed by a discussion of Torres's two claims of error.

A. *Section 654 and Count 6*

In his respondent's brief, the Attorney General contends the trial court erred when it stayed, pursuant to section 654, the eight-year determinate

---

[6] Neither the resentencing minute order nor the abstract of judgment mention or reflect the trial court's treatment of the sex offender fine and the related penalty assessments. However, the minute order and abstract do state that the trial court waived a court security fee (also referred to as a court operations assessment) (§ 1465.8) and a criminal conviction assessment (also referred to as a court facilities assessment) (Gov. Code, § 70373).

[7] After Torres filed her opening brief in this appeal, the Attorney General moved to dismiss the appeal under sections 1237.1 and 1237.2, arguing that Torres's "appeal challenges only the trial court's calculation of custody credits and imposition of fines and the record on appeal demonstrates [Torres] neither raised the errors at sentencing nor moved for correction in the trial court." Torres opposed the Attorney General's motion. This court denied the Attorney General's motion.

term imposed on count 6, because the conviction on that count was based on an act separate and distinct from those supporting Torres's other convictions. The Attorney General asks this court to remand this matter "to allow the trial court to lift the improperly imposed stay on [c]ount 6."

In her reply brief, Torres contends that a remand for resentencing on count 6 is not required. She asserts "because we do not know precisely what the jury found, and specifically which act[](s) it relied on for each conviction, and this [c]ourt must presume all facts in support of the trial court's decision [under section 654], the record does not support overturning the trial court's decision to stay punishment on [c]ount 6."[8]

1. Additional Background[9]

    a. Summary of Trial Evidence Supporting Convictions

One night, around July 19, 2017, A. told her mother Maria that Torres had touched her in her vagina area about two times. The next day, A. told her mother that Torres held a light while A. " 'saw something in a w[ie]ner-like figure' " and Garcia touched A. "Maria testified that A. said Garcia had

---

[8] Torres cites *People v. Hester* (2000) 22 Cal.4th 290, 295 (*Hester*) for the proposition that "[e]rrors in the applicability of section 654 may be corrected on appeal regardless of whether the point was raised by objection in the trial court." She makes no argument that the People forfeited or waived their section 654 argument by failing to assert it at the resentencing hearing or by asking the trial court to impose the same sentence it had imposed originally (which included a stayed term on count 6). Torres also makes no argument that the People's failure to appeal from the resentencing hearing precludes the Attorney General from raising the section 654 argument in this appeal. (See *People v. Purata* (1996) 42 Cal.App.4th 489, 498 ["[S]entences beyond the jurisdiction of the trial court . . . can be corrected any time when brought to the court's attention either by the People's appeal, by the Attorney General in response to the defendant's appeal, or by the Department of Corrections."].)

[9] The information and quotations stated in this section are derived from the procedural and factual background set forth in *Garcia, supra*, H046635.

put the 'hotdog' in her vagina area.  Additionally, Maria had previously told the police that A. said ' "[Garcia] put this soft thingy, put it in my butt." ' "[10]

About three weeks later, A. told a police detective that "Torres had touched her butt ' 'cause [her] butt was red.'  A. also described 'a big [] thing that his butt rode.  [¶] . . . [¶]  It's like a [] hot dog.  But more softer [sic].  [¶] . . . [¶]  It was so squishy.'  Torres touched A.'s butt after A. said 'don't touch my butt.  My mom will get mad.'  Torres touched A. with 'the hot dog thing, more squishier [sic] and more like saltier.'  The first time Torres touched A., '[s]he laid [A.] down and that hurt a lot.  [¶] . . . [¶]  She was pushing it like too hard.  [¶] . . . [¶]  And that [] hurt a lot.'  When asked to talk about 'the second time,' A. responded, 'Because she want to [sic] 'cause she likes it.'  When asked more directly if there was another time that Torres had touched her, A. said, 'No.' "

A. further told the detective that "Garcia had touched her butt.  A. said Garcia had something growing in his butt and 'she put it inside . . . . It was tickling me.  And I feel it.  [¶] . . . [¶]  It's like something soft.'  Garcia put something like a 'corndog' (which grew from his groin area and was 'slimy' with a 'blanket') in her butt.  Torres was present at the time and used a light on her phone.  A. further reported that Torres and Garcia took her to a 'car house.'  There, A. 'was laying down [in the bed], 'cause [Torres] wanted to touch [A.'s] butt.' "

A week after A. spoke to the detective, A. met with the detective again and told her that Garcia " 'just put that . . . hot dog in my butt, and she – he

<hr>

[10] Maria testified at trial that "A. called her 'privates' her 'colita,' meaning 'the whole area, the whole vagina and bump (phonetic) area.'  Maria further said that A. sometimes referred to the entire area as her 'butt.'  Additionally, A. testified that her ' "colita" ' is 'the part where [she] go[es] pee.' "

put it right now.'  A. further said that Torres 'touched [] my butt the first time. . . . The first time when he touched my butt.  [¶]  . . .  [¶]  The first time, when my mom take me there, the first time. . .[] he touched my butt.  [¶]  . . . [¶]  'Cause he wanted to.' "

During a police interview, Garcia said, inter alia, that "he and Torres had sex while A. was in the bedroom; they thought A. was asleep.  Garcia and Torres 'play[ed] around with the girl,' and he looked at A.'s vagina because it was 'chafed.'  Torres told Garcia to play with and touch A. 'like a woman.'  Torres held her phone and watched as Garcia touched A., including on her legs and buttocks.  Garcia also said that he slightly touched A.'s vagina 'almost by accident' with the back of his hand.  Garcia repeatedly denied that he had sexually abused or penetrated A."

During a police interview, Torres told detectives, inter alia, that "A. was curious about Garcia, wanted to play with and be around him, sat on his lap, and pretended to put makeup on him.  Torres denied touching A. inappropriately and said she and Garcia were never alone with A. in Torres's RV.  Torres also denied photographing A., but said she no longer had the phone she had at the time she babysat A. because it had been stolen."

"During the prosecution's case in chief (and upon stipulation of the parties), A.'s preliminary hearing testimony was read to the jury.  In that testimony, A. said Torres had touched her colita one time and Garcia had touched her colita one time."

"A. testified at trial that Torres had 'touched [her] colita' and Garcia 'had a little thingy on his colita [that] he put in [A.'s] colita.'  A. described the 'thingy' or 'little weenie' as long and feeling 'weird and wet.'  Torres held Garcia's weenie and 'put it on [A.'s] colita' while A. was on the bed in Torres's bedroom.  A. touched Garcia's weenie and it felt wet and hot.  Garcia held up

10

a light on Torres's phone for Torres to see.  The touching made A. feel mad and sad."

"Torres also touched A.'s colita in a 'camping car,' which made A. feel 'very, very mad.'  Torres had said Garcia was 'gonna get the little weenie thing to touch [A.'s] colita.  And [A.] said – "I wanna tell my mom" -- but [Torres] said, "Don't tell her."  But [A.] just told her.' "

"When asked by the prosecutor if there was anything else Garcia had done that A. did not like, A. testified that Torres 'said to go to [Garcia] and rub some soap on the little weenie thing.'  Torres gave A. the soap and told her to 'rub it and get on him' like 'getting on the chair.'  As this was happening, Garcia was '[r]elaxing and laying down.'  This made A. feel '[v]ery weird and sad and mad.' "

Torres testified on her own behalf at trial.  Torres stated, inter alia, that "she did not observe Garcia touch A. in any inappropriate way, and she did not see or take part in any inappropriate behavior with Garcia and A.  Torres further testified that she never left A. alone with Garcia 'except to go to the bathroom or the kitchen.' "  In addition, Torres testified that, the first time she watched A., Torres "applied [Desitin] cream over the surface of A.'s private parts" but "did not insert her finger inside A.'s vaginal area."  Later that night, when A. needed to use the bathroom, "Torres turned on the light on her cell phone to guide A. to the bathroom. Torres asked A. about how her private parts felt.  A. said she felt better, and Torres decided to apply more cream to A."

      b.  Jury Instructions, Closing Arguments, Verdicts, and Original Sentencing

"During the jury instruction conference, the trial court explained its understanding that the prosecution had decided to charge counts 5 through 8

11

(§ 288, subd. (b)(1)) as 'alternative,' 'lesser-related offenses' for the acts charged in counts 1 and 2 (§ 288.7, subd. (a) [sexual intercourse or sodomy]) and counts 3 and 4 (§ 288.7, subd. (b) [oral copulation or sexual penetration]). None of the parties disputed this summary. Further, the parties and the court agreed that both juries would be instructed on lesser included offenses for counts 5 through 8 but no lesser included offenses would be provided to the juries for counts 1 through 4."

"The trial court instructed both juries on lesser offenses only as to the crimes charged in counts 5 through 8. The court did not provide either jury any instruction regarding the 'alternative' nature of counts 1 through 4 and counts 5 through 8, and the verdict forms permitted the juries to return verdicts on all of the counts. In addition, the court's instructions for counts 1 and 2 told the jurors that the People had to prove '[t]he defendant engaged in an act of sexual intercourse with [A.] Doe.' Similarly, the instructions for counts 3 and 4 told the jurors that the People had to prove '[t]he defendant engaged in an act of oral copulation or sexual penetration with [A.] Doe.' Neither these instructions nor the related verdict forms specified what particular act committed by Garcia and/or Torres had to be proved by the prosecution to satisfy counts 1 through 4. Likewise, the instructions and verdict forms for counts 5 through 8 did not specify the relevant lewd or lascivious act that had to be proved by the prosecution."[11]

---

[11] To prove that a defendant is guilty of a violation of section 288, subdivision (b)(1), the People must prove that (1) "The defendant willfully touched any part of a child's body either on the bare skin or through the clothing"; (2) "In committing the act, the defendant used force, violence, duress, menace, or fear of immediate and unlawful bodily injury to the child or someone else"; (3) "The defendant committed the act with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of

"[D]uring closing argument to Torres's jury, the prosecutor argued that Torres was guilty of counts 1 through 4 and said that counts 5 through 8 involved sexual touching without any requirement of penetration. The prosecutor further explained that if the jurors 'think [Torres] is guilty of count 1 through 4, the legal penetration, sexual penetration, digital penetration and oral cop[ulation], she's also guilty of counts 5 through 8, because the penetration is also a sexual touching. Guilty of counts 1 through 4, also guilty of counts 5 through 8 automatically. But if you think that there's no penetration but you think that there is a sexual touching or oral copulation then she could be not guilty of counts 1 and 4, and still be guilty of counts 5 through 8, and that's because you just didn't think there was a legal penetration. And again, that it has to be oral copulation or touching for a sexual purpose. And again, we know it happened twice. Once in the apartment; once in the RV. And there's different things going on. It's legal penetration, digital penetration, copulation and legal penetration in both places. She is guilty of counts 5 through 8.' "

"Torres's defense counsel urged Torres's jury to 'say not guilty on the penetration' and contended that there was no evidence of sexual arousal as to Torres having put Desitin cream on A. Counsel also asserted that if the jurors felt Torres 'went out of bounds by putting Desitin on [A.], then hold her accountable for the battery, which is one of the less[e]rs that you have been instructed [on], but she did not molest [A.] All she did was put [on] cream.' "

As discussed *ante* (see pt. I.A.), Torres's jury found her guilty on count 1 (sexual intercourse), counts 3 and 4 (oral copulation or sexual penetration), and counts 5 through 8 (forcible lewd or lascivious act). The jury failed to

himself or the child"; and (4) "The child was under the age of 14 years at the time of the act." (CALCRIM No. 1111.)

reach a unanimous verdict on count 2 (one of the two sexual intercourse charges), and the trial court dismissed it.[12]

At Torres's original sentencing, "[t]he trial court said 'the jury was instructed [] that counts five, six, seven, and eight were lesser offenses to counts one, two, three and four . . .. And so I do think count six is a lesser offense.'[13]  After holding an unreported bench conference, the court stated further:  'The jury was instructed with regard to the lessers, the charge of lessers.  Given that the jury did not acquit [Torres] of the greater in count two, I think it was more appropriate to assume that the charge of count six was [section] 654 with regard to counts one, three and four.' "  (Capitalization omitted.)

2. Legal Principles

"Section 654 precludes multiple punishments for a single act or indivisible course of conduct."[14]  (*Hester*, *supra*, 22 Cal.4th at p. 294.)  "[T]he purpose of section 654 'is to insure that a defendant's punishment will be commensurate with his culpability.' "  (*People v. Latimer* (1993) 5 Cal.4th 1203, 1211.)  The defendant's intent and objective, not the temporal proximity of his or her offenses, determines whether the conduct is

---

[12] Our prior opinion noted that neither Garcia nor Torres had claimed "(either at trial or on appeal) that their convictions on counts 5 through 8 are improper multiple convictions under section 954."

[13] "This statement by the trial court does not accurately reflect the jury instructions.  As discussed above, although counts 5 through 8 were deemed 'alternative,' lesser related offenses to counts 1 through 4, the trial court only instructed Torres's jury on lesser offenses for counts 5 through 8, not for counts 1 through 4."

[14] Section 654, subdivision (a) provides in pertinent part:  "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."

14

indivisible. (*People v. Harrison* (1989) 48 Cal.3d 321, 335 (*Harrison*).) When section 654 prohibits multiple punishments, the trial court must stay execution of sentence on the convictions for which multiple punishment is prohibited. (*People v. Correa* (2012) 54 Cal.4th 331, 337 (*Correa*).)

"In determining the applicability of section 654, '[w]e first consider if the different crimes were completed by a 'single physical act.' [Citation.] If so, the defendant may not be punished more than once for that act. Only if we conclude that the case involves more than a single act—i.e., a course of conduct—do we then consider whether that course of conduct reflects a single " 'intent and objective' " or multiple intents and objectives.' [Citation.] If a defendant has independent criminal objectives, he may be punished for each crime committed pursuing an independent objective, even if the crimes share common acts or are otherwise part of an indivisible course of conduct." (*People v. Kopp* (2019) 38 Cal.App.5th 47, 90, review granted on another issue Nov. 13, 2019, S257844 (*Kopp*) [quoting *People v. Corpening* (2016) 2 Cal.5th 307, 311 (*Corpening*)]; see also *Harrison*, *supra*, 48 Cal.3d at p. 335.)

"If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Neal v. State of California* (1960) 55 Cal.2d 11, 19, overruled in part on another ground in *Correa*, *supra*, 54 Cal.4th at p. 341.) "However, the rule is different in sex crime cases. Even where the defendant has but one objective—sexual gratification—section 654 will not apply unless the crimes were either incidental to or the means by which another crime was accomplished. [Citations.] [¶] But, section 654 does not apply to sexual misconduct that is 'preparatory' in the general sense that it is designed to sexually arouse the perpetrator or the victim. [Citation.] That makes section 654 of limited utility to defendants who commit multiple sex crimes against a single victim

15

on a single occasion. As our Supreme Court has stated, '[M]ultiple sex acts committed on a single occasion can result in multiple statutory violations. Such offenses are generally "divisible" from one another under section 654, and separate punishment is usually allowed.' " (*People v. Alvarez* (2009) 178 Cal.App.4th 999, 1006; see also *People v. Patton* (2024) 101 Cal.App.5th 922, 930 [citing *Harrison, supra*, 48 Cal.3d at pp. 337–338 & *People v. Perez* (1979) 23 Cal.3d 545, 550–553]; *People v. Scott* (1994) 9 Cal.4th 331, 346–348.)

" 'Ordinarily, in determining whether Penal Code section 654 applies, the trial court is entitled to make any necessary factual findings not already made by the jury.' [Citations.] . . . '[I]n the absence of some circumstance "foreclosing" its sentencing discretion . . ., a trial court may base its decision under section 654 on any of the facts that are in evidence at trial, without regard to the verdicts.' " (*People v. Deegan* (2016) 247 Cal.App.4th 532, 545.)

"The question of whether section 654 is factually applicable to a given series of offenses is for the trial court, and the law gives the trial court broad latitude in making this determination." (*People v. DeVaughn* (2014) 227 Cal.App.4th 1092, 1113; see also *Harrison, supra*, 48 Cal.3d at p. 335; cf. *Corpening, supra*, 2 Cal.5th at p. 312 ["When [the] facts are undisputed . . . the application of section 654 raises a question of law we review de novo."].) An appellate court will sustain a trial court's implied factual determination in the application of section 654 if supported by substantial evidence. (*People v. Osband* (1996) 13 Cal.4th 622, 730–731; *People v. Brents* (2012) 53 Cal.4th 599, 618.) "This standard of review is exceedingly deferential." (*People v. Venegas* (2020) 44 Cal.App.5th 32, 38; see also *People v. Jones* (2002) 103 Cal.App.4th 1139, 1143 (*Jones*).)

3. <u>Analysis</u>

We decide, as an initial matter, that our review of the trial court's section 654 ruling involves disputed facts. Neither the trial evidence, the prosecutor's closing argument, nor the jury's verdicts clearly indicate the specific acts that the jury may have relied on to return any of its guilty verdicts. Hence, on this record, we do not know for certain which act the jury used to find Torres guilty on count 6 or how that act might have been relied on by the jury to find Torres guilty on counts 1, 3, or 4. Accordingly, we employ the deferential substantial evidence standard of review. (See *Kopp*, *supra*, 38 Cal.App.5th at p. 91, review granted.)

Moreover, as discussed *ante*, the trial court did not articulate a reason at Torres's resentencing for staying the punishment on count 6—although it had stated previously at Torres's original sentencing that it was " 'appropriate to assume that the charge of count six was [section] 654 with regard to counts one, three and four.' " (*Garcia*, *supra*, H046635, capitalization omitted.) Given the lack of specificity in the court's section 654 ruling, we must presume the existence of facts supporting that ruling which can reasonably be ascertained from the evidence. (See *Jones*, *supra*, 103 Cal.App.4th at p. 1143.)

Substantial evidence supports the trial court's decision to stay the punishment on count 6. As detailed *ante* (pt. II., A.1.a.), soon after A. disclosed the sexual abuse to her mother, A. told the investigating detective that "Torres had touched her butt" and "Torres touched A. with 'the hot dog thing.' " (*Garcia*, *supra*, H046635.) A. also told the detective about Garcia touching "her butt" and putting "something like a 'corndog' . . . in her butt" while Torres "used a light on her phone." (*Ibid*.) At the preliminary hearing, A. testified that "Torres had touched her colita one time and Garcia had

17

touched her colita one time." (*Ibid*.) At trial, A. testified "that Torres had 'touched [her] colita' and Garcia 'had a little thingy on his colita [that] he put in [A.'s] colita.' . . . Torres held Garcia's weenie and 'put it on [A.'s] colita' while A. was on the bed in Torres's bedroom." (*Ibid*.) In addition, A. testified that "Torres also touched A.'s colita in a 'camping car,'" and "Torres had said Garcia was 'gonna get the little weenie thing to touch [A.'s] colita.'" (*Ibid*.)

Based on this evidence, the trial court could reasonably have decided that the jury's verdict on count 1 (sexual intercourse) involved Torres putting Garcia's penis in A.'s vagina and, as a means of accomplishing the intercourse, Torres touched A.'s vagina twice, resulting in a conviction on count 6 as well as on count 5. On these facts, the trial court could appropriately stay the punishment on count 6 pursuant to section 654. (See *People v. Madera* (1991) 231 Cal.App.3d 845, 855 [explaining that section 654 would bar separate punishment for applying lubricant to an area to be copulated, because in that situation "the commission of the undefined act would have directly facilitated the commission of the defined act"].) For this reason, the record does not establish that the trial court erred by staying the punishment imposed on count 6.

B. *Custody Credits*

Torres contends that neither the resentencing minute order nor the abstract of judgment correctly sets forth her actual and local conduct credits. Torres further asserts that the minute order and abstract do not explain the CDCR's role in determining her entitlement to conduct credits for the period between her original sentencing in December 2018, and her resentencing in November 2023. Torres asks this court to order corrections to the abstract. The Attorney General agrees that Torres's custody credits are not properly reflected in the minute order and abstract.

18

At the resentencing hearing, the trial court explained that Torres is entitled to 488 days of actual credits and 73 days of local conduct credits (§ 2933.1), as awarded at her original sentencing hearing on December 17, 2018. (See pt. I.B., *ante*.) The court further stated that Torres is entitled to an additional 1,793 days of actual credit for the period from December 18, 2018 through November 14, 2023 (the resentencing hearing date). (*Ibid*.) Notwithstanding the court's correct award of custody credits, the resentencing minute order and the abstract of judgment do not properly reflect the custody credits awarded.

Ordinarily, where there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185–186; *People v. Zackery* (2007) 147 Cal.App.4th 380, 385.)

Based on the trial court's pronouncement, the trial court clerk should have listed Torres's actual credits in the resentencing minute order and the abstract of judgment as 2,281 days—i.e., the sum of Torres's actual credits (488 days) awarded at the original sentencing, plus the time between her original sentencing and resentencing (1,793 days). Additionally, the clerk should have indicated in the minute order and abstract that the court awarded Torres 73 days of local conduct credits (§ 2933.1). (See *People v. Dean* (2024) 99 Cal.App.5th 391, 396–397; *People v. Buckhalter* (2001) 26 Cal.4th 20, 23, 28–30.)

Because the resentencing minute order (dated November 14, 2023) and the abstract of judgment (dated November 16, 2023) do not properly reflect Torres's total custody credits (i.e., 2,354 days), consisting of her actual credits (i.e., 2,281 days) and local conduct credits (i.e., 73 days), we direct the trial court to amend the resentencing minute order and abstract of judgment to

19

correctly state those credits in accordance with the court's oral pronouncement. (See *People v. Jones* (2000) 82 Cal.App.4th 485, 493.) We further direct the trial court to amend the resentencing minute order and abstract of judgment to clearly reflect its order that CDCR calculate Torres's good time/work time credits for the 1,793-day period from December 18, 2018, through November 14, 2023.

C. *Fines and Fees*

In her opening brief, Torres notes that both the resentencing minute order and the abstract of judgment list a $5,000 restitution fine. She further notes that the minute order and abstract are silent regarding the $300 sex offender fine. She contends that "[n]either the [minute] order, nor the abstract, accurately reflects the court's pronouncement. [¶] It appears the court intended that Torres not have to pay either a restitution fine, or a sex offender fine, and that it determined she does not have the ability to pay either fine. This is consistent with its decision to 'waive the balance of the fees.'" Torres requests that we strike the restitution fine and sex offender fine based on the court's purported intent that Torres does not have to pay them. Alternatively, Torres states that this court should "remand for the trial court to expressly determine whether Torres has the ability to pay the fines, or whether there is some other reason why she should not be required to pay them, and to specify its intent and decision consistent with the statutory requirements."

The Attorney General responds that "there was no basis for the [trial] court to waive the restitution fine" and thus this court should reject Torres's request to strike that fine. The Attorney General further contends the sex offender fine and other mandatory fines, fees, and assessments (including a court operations assessment (§ 1465.8), a criminal conviction assessment

20

(Gov. Code, § 70373), and the penalty assessments related to the sex offender fine (see § 1464; Gov. Code, § 76000)) should have been but were not imposed at Torres's resentencing.  To remedy these alleged errors, the Attorney General suggests:  "Given the complexity of the sentencing errors . . ., the matter should be remanded for recalculation of these fines and fees to comport with the statutorily required amounts per count."  However, the Attorney General also asserts that, with respect to these fines and fees, "this [c]ourt may impose them for the first time on appeal.  [Citations.]  This [c]ourt should order the abstract of judgment to be amended accordingly."

In her reply brief, Torres asserts that the People forfeited any objection to the trial court's actions concerning the restitution fine, the sex offender fine, and the other fines, fees, and assessments that they now claim should have been imposed at resentencing.  Further, Torres reiterates that "[s]hould this [c]ourt determine that any issues remain regarding the imposition of fines or fees, the proper remedy is not to impose additional amounts, but to remand for the trial court to address Torres's ability to pay, or other relevant payment issues."

1. Legal Principles

Regarding the restitution fine, section 1202.4, subdivision (b) provides that "[i]n every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so and states those reasons on the record."  The restitution fine under this section is required to be not less than $300.  (*Id*., subd. (b)(1).)  "A defendant's inability to pay shall not be considered a compelling and extraordinary reason not to impose a restitution fine."  (*Id*., subd. (c).)

21

A court operations assessment of $40 "shall be imposed on every conviction for a criminal offense." (§ 1465.8, subd. (a)(1).) Similarly, a criminal conviction assessment "shall be imposed on every conviction for a criminal offense . . .. The assessment shall be imposed in the amount of thirty dollars ($30) for each misdemeanor or felony." (Gov. Code, § 70373, subd. (a)(1).)

In *People v. Dueñas* (2019) 30 Cal.App.5th 1157, the Court of Appeal reversed an order imposing the court operations assessment (§ 1465.8) and the criminal conviction assessment (Gov. Code, § 70373) after concluding that it was fundamentally unfair and violated constitutional due process principles to impose the assessments without a determination of the defendant's ability to pay. (*Id.* at pp. 1168, 1172.) The *Dueñas* court also concluded that, as a matter of due process, "although the trial court is required by Penal Code section 1202.4 to impose a restitution fine, the court must stay the execution of the fine until and unless the People demonstrate that the defendant has the ability to pay the fine."[15] (*Id.* at p. 1172; see also *People v. Alvarez* (2025) 18 Cal.5th 387, 484 [explaining that "the result imposed in *Dueñas* when an ability to pay finding has not been made is effectively the same as . . . [a] suspension or staying the execution of the restitution fine"]; cf. *People v. Woods* (2010) 191 Cal.App.4th 269, 273

---

[15] The California Supreme Court has granted review of *Kopp* to address the following issues in light of *Dueñas*: "(1) Must a court consider a defendant's ability to pay before imposing or executing fines, fees, and assessments; and (2) If so, which party bears the burden of proof regarding defendant's inability to pay." (*People v. Ramirez* (2023) 98 Cal.App.5th 175, 224, fn. 8; see also *Kopp*, *supra*, 38 Cal.App.5th at p. 95, review granted [agreeing with *Dueñas* that due process requires an ability to pay determination before imposition of court operations or court facilities assessment].)

[concluding "[t]here is no authority to 'stay' the facilities assessment, restitution fine and court security fee"].)

Regarding the sex offender fine, section 290.3, subdivision (a) provides in pertinent part: "Every person who is convicted of any offense specified in subdivision (c) of [s]ection 290 shall, in addition to any imprisonment or fine, or both, imposed for commission of the underlying offense, be punished by a fine of three hundred dollars ($300) upon the first conviction or a fine of five hundred dollars ($500) upon the second and each subsequent conviction, unless the court determines that the defendant does not have the ability to pay the fine." "[O]nce a sex offender fine is imposed pursuant to subdivision (a) of section 290.3, a trial court must also impose penalty assessments pursuant to section 1464 and Government Code section 76000, subdivision (a)." (*People v. Villegas* (2023) 97 Cal.App.5th 253, 284; see also *People v. Stewart* (2004) 117 Cal.App.4th 907, 911; *People v. Hamed* (2013) 221 Cal.App.4th 928, 940–941 & fn. 8 (*Hamed*); *People v. Walz* (2008) 160 Cal.App.4th 1364, 1371–1372 (*Walz*).)

2. Analysis

As detailed *ante* (pt. I.B.), at the resentencing hearing, Torres's defense counsel alluded to Torres's inability to pay any fines and fees by noting that she had been in custody for some time. The trial court proceeded to "impose" but "suspend execution" of a $5,000 restitution fine as well as "a $300 [sex offender] fine plus penalty assessment under [section] 290.3." Additionally, the court "waive[d] the balance of the fees."

We understand the trial court's oral pronouncement as having: (1) imposed the $5,000 restitution fine (§ 1202.4, subd. (b)); (2) suspended/stayed the execution of that restitution fine under *Dueñas* (notwithstanding the court's failure to mention that decision); (3) imposed a $300 sex offender fine

23

and the related penalty assessments (§§ 290.3, subd. (a), 1464, subd. (a); Gov. Code, § 76000, subd. (a)); (4) suspended/stayed the execution of that sex offender fine and the related penalty assessments based on inability to pay and *Dueñas*; and (5) "waive[d]" (and did not impose) any other applicable fees, including the court operations assessment (§ 1465.8) and a criminal conviction assessment (Gov. Code, § 70373), as reflected in the resentencing minute order and abstract of judgment.

Given that the trial court said it was imposing a $5,000 restitution fine, we reject Torres's request to strike that fine. In turn, we will not direct the trial court to modify either the resentencing minute order or the abstract of judgment regarding the $5,000 restitution fine, because the references in those documents to that restitution fine (which was actually imposed) are correct. However, because neither the minute order nor abstract reflect that the trial court suspended execution of that restitution fine, we direct the trial court to amend the resentencing minute order and abstract of judgment to state, in accordance with the oral pronouncement, that execution of the $5,000 restitution fine (§ 1202.4, subd. (b)) is suspended.

Relatedly, to the extent that the Attorney General challenges the trial court's suspension of execution of the $5,000 restitution fine, under the present circumstances, we reject that contention as forfeited by the district attorney's failure to object at the resentencing hearing. (See *People v. Tillman* (2000) 22 Cal.4th 300, 302–303 [applying forfeiture where the People did not object to the trial court's failure to state on the record its reasons for not imposing restitution fines].)

Regarding the $300 sex offender fine and related penalty assessments under section 290.3, irrespective of any forfeiture by the People, because the trial court in fact imposed but suspended that fine and related assessments,

we reject Torres's request to strike that fine and the penalty assessments. The court's oral pronouncement evinces its imposition and suspension of execution of the $300 sex offender fine and related penalty assessments for one conviction.

Notwithstanding the trial court's pronouncement regarding the $300 sex offender fine and related penalty assessments under section 290.3, neither the resentencing minute order nor the abstract of judgment reflect the court's imposition and suspension of execution of that sex offender fine and its related penalty assessments. This discrepancy requires correction. (See *Hamed*, *supra*, 221 Cal.App.4th at p. 940; see also *People v. Sharret* (2011) 191 Cal.App.4th 859, 864.) We direct the trial court to amend the resentencing minute order and abstract of judgment to state, in accordance with the oral pronouncement, that the court imposed and suspended execution of a $300 sex offender fine and related penalty assessments, including a statement of the amounts of and statutory basis for each of the penalty assessments. (*Hamed*, at p. 940.)

As for any additional $500 sex offender fines based on Torres's remaining convictions, because the trial court did not mention any additional fines under section 290.3 and the People did not object to the trial court's failure to impose additional fines, "we must presume that the trial court determined that [Torres] does not have the ability to pay the [] additional $500 fines." (*Walz*, *supra*, 160 Cal.App.4th at p. 1371; see also *Sharret*, *supra*, 191 Cal.App.4th at p. 864.)

Regarding the court operations assessment (§ 1465.8) and the criminal conviction assessment (Gov. Code, § 70373), the district attorney's lack of objection to the trial court's failure to impose those assessments forfeits any claim of error by the Attorney General in this appeal. (See *People v. Burke*

25

(2023) 89 Cal.App.5th 237, 244.)  Thus, we decline to direct the trial court to impose the court operations assessment or criminal conviction assessment.

D. *Another Error in Abstract of Judgment*

Although not raised by Torres or the Attorney General, the trial court improperly included Torres's determinate sentences (counts 5–8), along with her indeterminate sentences (counts 1, 3 & 4) on an abstract of judgment form designated for an indeterminate sentence (form CR–292).  The court, instead, should have recorded the imposed (but stayed) determinate terms for counts 5 through 8 in a separate abstract of judgment form designated for a determinate sentence (form CR–290).

We direct the trial court to prepare an amended abstract of judgment for the indeterminate sentence (form CR–292) that includes only the indeterminate terms imposed on counts 1, 3, and 4 (but checks the box in section No. 7 to indicate there is an "[a]dditional determinate term") and an amended abstract of judgment for the determinate sentence (form CR–290) that includes the determinate terms imposed (but stayed) on counts 5 through 8.

## III.  DISPOSITION

The judgment is affirmed.  The trial court is directed to prepare an amended resentencing minute order and amended abstracts of judgment that:  (1) state Torres's total custody credits as 2,354 days, consisting of actual custody credits of 2,281 days, and local conduct credits of 73 days; (2) order the California Department of Corrections and Rehabilitation to calculate Torres's good time/work time credits for the 1,793-day period from December 18, 2018, through November 14, 2023; (3) state that the trial court suspended execution of the $5,000 restitution fine (§ 1202.4, subd. (b)); and (4) state that the trial court imposed and suspended execution of a $300 sex

26

offender fine and related penalty assessments, including the amounts of and statutory basis for each of the penalty assessments.  The trial court is further directed to prepare separate abstracts of judgment for the indeterminate terms imposed on counts 1, 3, and 4 and the determinate terms imposed (but stayed) on counts 5 through 8.

The trial court clerk is directed to forward a certified copy of the amended abstracts of judgment to the California Department of Corrections and Rehabilitation.

_____
Danner, J.

WE CONCUR:


_____
Greenwood, P. J.



_____
Bromberg, J.



**H051725**
*People v. Torres*